TOM LOFTUS, Chairperson Assembly Organization Committee
You have sought my opinion on the legality of Iowa licensed riverboat gambling in Wisconsin waterways. The answers to the questions posed depend upon the authority of the State of Wisconsin to regulate activity on the Wisconsin portion of the Mississippi River and upon the application of chapter 945, Stats., to the gambling hypotheticals you posit. I have concluded that the State of Wisconsin is authorized to prohibit casino-type gambling on the Wisconsin portion of the Mississippi River and the types of activities you have posed may constitute violations of chapter 945.
The State of Wisconsin has authority to exercise criminal jurisdiction over portions of the Mississippi River which border it. The Act of Congress admitting Wisconsin into the Union, Act of August 6, 1846, ch. 89, 9 Stat. 57, provides in part as follows:
 [T]he said State of Wisconsin shall have concurrent jurisdiction on the Mississippi, and all other rivers and waters bordering on the said State of Wisconsin, so far as the same shall form a common boundary to said State and any other State or States now or hereafter to be formed or bounded by the same.
Article IX, section 1 of the Wisconsin Constitution provides in part: "The state shall have concurrent jurisdiction on all rivers and lakes bordering on this state so far as such rivers or lakes shall form a common boundary to the state and any other state."
The Wisconsin Legislature has acted on the federal grant of concurrent jurisdiction affirmed in article IX, section 1 of the Wisconsin Constitution by expressly extending its criminal *Page 207 
jurisdiction to include the rivers and lakes bordering the state. Section 939.03 (1)(a) provides: "[j]urisdiction of state over crime. (1) A person is subject to prosecution and punishment under the law of this state if: (a) He commits a crime, any of the constituent elements of which takes place in this state."
Section 939.03 (2) defines "state": (2) "[i]n this section `state' includes area within the boundaries of the state, and area over which the state exercises concurrent jurisdiction under article IX, section 1, of the constitution." Section 971.19 (7) provides the place of trial for a criminal offense committed on boundary waters. Thus, the criminal code, including its gambling provisions, extend at least to the main channel of the Mississippi River.
The United States and Wisconsin Supreme Courts have interpreted the grant of "concurrent jurisdiction" between states to include the authority to regulate, through the criminal law, activities on their water borders. Nielsen v. Oregon, 212 U.S. 315
(1909); Miller v. McLaughlin, 281 U.S. 261 (1930); The State v.Cameron, 2 Pin. 490 (Wis. 1850); The State v. McDonald,109 Wis. 506, 85 N.W. 502 (1901); Roberts v. Fullerton, 117 Wis. 222,93 N.W. 1111 (1903). The holding of these cases and the current state of the law is succinctly stated in an opinion by one of my predecessors:
 The opinion in the Nielsen case provides authority for the following conclusions:
 (1) Jurisdiction of both states over acts mala in se
(acts "bad" in themselves and therefore prohibited) extends the full width of a boundary water. In this situation, the state first commencing the prosecution obtains primary jurisdiction;
 (2) In the case of acts which are merely mala prohibita (not inherently "bad" but prohibited by law for a variety of purposes), and are illegal in only one of the two adjoining states, jurisdiction of the "prohibiting" state *Page 208 
extends only to the territorial limits thereof — e.g., to the thread or center of the main channel of the boundary water;
 (3) Even if an act is only by nature malum prohibitum, if it is made illegal by the law of both adjoining states, the principles of No. (1), above, apply, and each state's jurisdictional arm extends the full width of the boundary water. The state first asserting jurisdiction over a given act similarly obtains priority, and, as in the first-described situation, its judgment is final in both states. See 37 OAG 570, 572 (1948).
. . . .
 Violations mala in se comprise generally those acts which are immoral or wrong in themselves, or naturally "evil", such as murder, arson, burglary, breach of the peace, forgery, drunken driving, etc. State v. Kelison, (1943) 233 Iowa 1274, 11 N.W.2d 371; State v. Darchuck, (1945) 117 Mont. 15, 156 P.2d 173. The term malum prohibitum, on the other hand, embraces those things which are not inherently "evil", but which are prohibited by statute because they infringe upon the rights of others. They are crimes only because they are so prohibited. Violation of licensing laws, automobile speed restrictions, gambling, etc., are examples of acts considered to be merely mala prohibita.
(Citations omitted, emphasis added.) 56 Op. Att'y Gen. 278, 280-81 (1967).
The hypotheticals you pose would fall into the second category of jurisdiction. Gambling is malum prohibitum in Wisconsin but legalized in Iowa and you have limited your facts to operation within Wisconsin waters.
Since Wisconsin's gambling laws are enforceable on the Mississippi River in Wisconsin water, I now address each of your hypotheticals.
 1. May an Iowa riverboat, designed for gambling, enter Wisconsin waterways with gambling apparatus on board? *Page 209 
Iowa Code § 99F (Supp. 1989), provides for the licensing and operation of excursion boat gambling in the State of Iowa. Section 99F.3 authorizes gambling games when properly licensed. Section 99F.1 10. defines "gambling games" as "twenty-one, dice, slot machine, video game of chance or roulette wheel." All of these contrivances would fall within the Wisconsin definition of "gambling machine" in section 945.01 (3)(a). Should an Iowa licensed riverboat enter Wisconsin water while its "gambling games" are in play, this would constitute a violation of chapter 945 by the operator as well as the employes and patrons of the riverboat. Secs. 945.03 and 945.02, Stats.
Should the riverboat stop its games when it enters Wisconsin waters, it may still be in violation of chapter 945 as a gambling place if its entry is to facilitate its principal function of gambling. Several provisions of chapter 945 prohibit "gambling places." Section 945.01 (4) provides:
 GAMBLING PLACE. (a) A gambling place is any building or tent, any vehicle (whether self-propelled or not) or any room within any of them, one of whose principal uses is any of the following: making and settling bets; receiving, holding, recording or forwarding bets or offers to bet; conducting lotteries; or playing gambling machines.
Section 939.22 (44) provides: "`[v]ehicle' means any self-propelled device for moving persons or property or pulling implements from one place to another, whether such device is operated on land, rails, water, or in the air." Thus, if an Iowa licensed riverboat enters Wisconsin water it would be considered a "gambling place" whether or not the gaming has stopped.
Section 945.03 (1) prohibits the operation of a gambling place: "[c]ommercial gambling. Whoever intentionally does any of the following is engaged in commercial gambling and is guilty of a Class E felony: (1) Participates in the earnings of or for gain operates or permits the operation of a gambling place . . . ."
The Legislature has not defined "operation" for purposes of section 945.03 (1). The Wisconsin Jury Instructions-Criminal *Page 210 
1601 (1985), Commercial Gambling: Operating A Gambling Place For Gain, states: "[t]o `operate' means that one directs and manages the day to day activities that occur on the premises." Section 945.03 (1) may be violated by an Iowa riverboat that intentionally enters Wisconsin water for any purpose in furtherance of its gaming business. By pursuing its gaming mission, it is operating as a gambling place whether or not gaming is taking place.
 2. May an Iowa riverboat, designed for gambling, dock at a Wisconsin port for the purpose of loading passengers intending to gamble?
The riverboat in entering Wisconsin water and docking at a Wisconsin port for the purpose of loading passengers would be operating as a gambling place and in violation of chapter 945. The docking and embarking of passengers is an integral function to the operation of the riverboat and its gambling purpose. The docking phase of the gambling operation is so material that Iowa only allows docking where the Iowa State Racing and Gaming Commission has authorized it. Iowa Code § 99F.3.
 3. May an Iowa riverboat, designed for gambling, dock at Wisconsin ports, pick up passengers and return to Iowa waters to engage in gambling?
As discussed in response to the last question, I believe it would be a violation of chapter 945 for a gambling machine-equipped riverboat to dock at a Wisconsin port, whether or not gaming takes place at the Wisconsin dock or waters. Section 945.02 (2) may also be implicated when the boat embarks passengers at a Wisconsin dock or water. Section 945.02 (2) provides: "[g]ambling. Whoever does any of the following is guilty of a Class B misdemeanor: . . . (2) Enters or remains in a gambling place with intent to make a bet, to participate in a lottery, or to play a gambling machine. . . ." The gambler that boards the riverboat is entering a gambling place with intent to make a bet or play a gambling machine. This is a prima facie violation of section 945.02 (2). *Page 211 
 4. May an Iowa riverboat, designed for gambling, enter Wisconsin waterways, remain offshore and transport persons from a Wisconsin dock to the riverboat, which then will return to Iowa jurisdiction for gambling purposes?
My opinion on this hypothetical remains the same as the previous. Once the riverboat has entered Wisconsin water it may be engaged in illegal commercial gambling by operating as a gambling place. Sec. 945.03, Stats. The transporting of gamblers from a Wisconsin dock to the riverboat in Wisconsin water may constitute additional counts of illegal gambling. Secs. 945.02 and945.03, Stats.
My opinion has reviewed your gambling hypotheticals in light of the Wisconsin Criminal Code. I would note that federal gambling law may also prohibit the type of activity you posit.15 U.S.C.A. § 1172 (1982) provides that it would be unlawful to knowingly transport any gambling device into one state from a place outside of that state unless that state has specifically exempted itself from this provision, or unless the device is being transported to a gambling establishment where betting is legal under applicable state law, or where the gambling device is specifically enumerated as being lawful in that state's statutes. The penalties for violation of this provision include a fine of not more than $5,000 or imprisonment of not more than two years, or both, and possible seizure and forfeiture of the vessel and gambling machines. 15 U.S.C.A. § 1176, 1177 (1982).
DJH:SET *Page 212