STATE of Wisconsin, Plaintiff-Respondent-Petitioner,

v.

Robert A. MENDOZA, Defendant-Appellant.

Supreme Court

*No. 97–0952–CR. Oral argument April 13, 1999.—Decided
July 8, 1999.*

(Also reported in 596 N.W.2d 736.)

For the plaintiff-respondent-petitioner the cause was argued by *Gregory M. Posner-Weber*, assistant attorney general, with whom on the brief was *James E. Doyle*, attorney general.

For the defendant-appellant there was a brief and oral argument by *Michael K. Gould*, assistant state public defender.

¶ 1.   DAVID T. PROSSER, J.   The State of Wisconsin (State) seeks review of the court of appeals' decision in *State v. Mendoza*, 220 Wis. 2d 803, 584 N.W.2d 174 (Ct. App. 1998), which reversed Robert A. Mendoza's (Mendoza) conviction on grounds that the circuit court erred when it removed four prospective jurors for cause. The issues presented are whether the circuit court erroneously removed the four jurors because they had been convicted of crimes, and, if so, whether automatic reversal of Mendoza's conviction is required.

## FACTS & PROCEDURAL HISTORY

¶ 2.   The facts are not in dispute. Mendoza was charged with possessing a controlled substance (cocaine) with intent to deliver, as a second or subsequent offense, in violation of Wis. Stat. § 161.41(3m) (1993–94).[1]   A three day trial, beginning August 29, 1996, was held in Milwaukee County Circuit Court, the Honorable Laurence C. Gram, presiding.

¶ 3.   The relevant facts concern jury selection, not the actual trial. After the State completed its examination of the jury panel as a whole, five prospective jurors were examined in chambers. The examination revealed that four of the jurors had been convicted of crimes and one had a brother-in-law who had been convicted of a drug offense.

---

[1] All references to the Wisconsin Statutes are to the 1993–94 version unless otherwise noted.

¶ 4. The first prospective juror called into chambers, Crane C. (Juror Number Two), was arrested on April 5, 1996, for misdemeanor possession of cocaine. He pled guilty to the charge in Milwaukee County and was sentenced to 16 days in jail with Huber privileges starting September 19, 1996. Crane C. assured the court that he could be fair to both the prosecutor and Mendoza and render a decision based on the facts of the case.

¶ 5. The second juror, Douglas F. (Juror Number 12), revealed that his brother-in-law was arrested and convicted of cocaine possession in California the previous year. Douglas F. stated that he could not ignore his experience with his brother-in-law but would try to be fair and impartial.[2]

¶ 6. The third juror, James M. (Juror Number 19), disclosed that he had been convicted in Milwaukee County of armed robbery in 1966 and convicted of two misdemeanors (carrying a concealed weapon and resisting an officer) in 1982 or 1983. He stated that he believed his sentence for the armed robbery was too stiff and that the sentence still bothered him. He said he felt he should not have been arrested for the incident in the early 1980s. Nevertheless, James M. stated that he thought he could be impartial to both the State and Mendoza if he was chosen to sit as a juror.

---

[2] The record reveals that Douglas F. did not serve on the jury. He was not struck for cause. Therefore, it can be assumed that he was eliminated from the jury pool through the use of a peremptory strike by either the State or Mendoza.

Since Douglas F. was neither convicted of a crime himself nor struck for cause, he is not a focus of our review. Only the four jurors who themselves were convicted of crimes are the subject of our review.

¶ 7. The fourth juror, Ike S. (Juror Number 11), disclosed he had been convicted of burglary in Alabama about 30 years before. He stated he had no problem with the manner in which the police or the prosecutor's office handled the situation. Ike S. stated that he knew he could be fair sitting as a juror.

¶ 8. The fifth prospective juror, Luciano R. (Juror Number 9), revealed he was convicted of burglary in 1994 in New York and incarcerated for eighteen months. He claimed he did not commit the burglary and that the woman who owned the burglarized building did not like him and falsely accused him of the burglary. He also stated that he thought people are set up by others who don't like them. Luciano R. assured the court that his case would not affect Mendoza's case.

¶ 9. After the defendant's examination of the jury pool, the assistant district attorney asked the circuit court to strike for cause the four prospective jurors who had been convicted of crimes:

MR. BENKLEY: [Assistant District Attorney]: Your Honor, I believe we have three persons who are convicted felons on the jury and I feel that that history itself is sufficient for striking those persons for cause. I think specifically Mr. [R.], Mr. [M.], and Mr. [S.]. Additionally Mr. [C.] has been recently convicted of possession of cocaine, has not yet even served his sentence and. . .must report for his sentence to incarceration at the House of Corrections on September I believe he said 19th, roughly three or four weeks from now or [three] weeks from now. Although he articulated it wouldn't affect him I'm just very uncomfortable with that situation.

¶ 10. Mendoza's counsel objected, stating:

MR. MALONE [Defense Counsel]: For the record, Judge, I would object to the individuals that the State has requested that there be a challenge for cause to because I think during the individual voir dire that was conducted they said that they basically could be fair by the law. I think that the inference here is that a person has been convicted of a felony and that, therefore, they somehow do not qualify for service on a jury is something analogous to saying that if there is a case involving police officers, if somebody who is sitting on the jury panel is a police officer, that they are not qualified and I think the Court has already ruled—the courts in this state, trial court has ruled that's not so.

. . .

Here we have a situation where we have three—four people, three involving felony offenses. I believe all except for Mr. [R.], Number Nine, who pled guilty and so these are people that despite their convictions and despite maybe that they aren't particularly happy, accepted their responsibility and for that they received a conviction. That does not automatically disqualify them because they haven't—they haven't said anything in response to questioning during voir dire that has left any reason to doubt their ability to be fair and impartial.

¶ 11. Judge Gram granted the State's motion to strike, stating:

THE COURT: Well, let me say this as a general proposition. That I was concerned as a I heard some of the responses to the questions about the panel as a whole. I felt there were an unusual number of people that had perhaps problems who indicated that they might have difficulty being fair and that bothers me, the number, because many times I have denied challenges for cause and pointed out that we

844

have peremptory challenges and they are for a reason and to a certain extent that's true but when I get this number it bothers me.

So, I tell you what I'm going to do. This is a matter that goes to the broad discretion of the Court. We have a panel here of 25 people. We have five people challenged. If we strike all five people, we will have—we have got—we are left with 20. We still have the basis of selecting a jury and I think, if we select a jury from those 20, we are more likely to have a fair and impartial jury than if we—than if I simply—I think I could either accept all of them, I could summarily deny all of them. In this case I'm going to accept all of them which means that we will strike Juror Number Two [Crane C.], Juror Number Six [Jacqueline D.],[3] Juror Number Nine [Luciano R.], Juror Number Eleven [Ike S.], Juror Number 19 [James M.] and we proceed to select the jury from the balance. I don't think we have to do any changing of positions or anything like that. Everybody knows who we struck and at this point except for those we have

¶ 12.   After the court struck these five prospective jurors, the parties exercised their peremptory strikes.

[3] Jacqueline D. disclosed that her son had pled guilty to felony distribution of illegal substances, served time in April for the offense, and was on parole. She stated that she felt her son was treated fairly by the system but that the experience was very recent and she was still bitter about it. She stated she may not have been able to be fair to the State or to Mendoza.

Mendoza's attorney challenged prospective juror Jacqueline D. for cause. He asserted that Jacqueline D. was not sure she could be fair to the State or Mendoza.

Jacqueline D., like prospective juror Douglas F., is not a focus of our review because she was not herself convicted of a crime. Our focus remains on those prospective jurors who were convicted of crimes and struck for that reason.

845

The remaining jurors then sat as the jury that heard Mendoza's case.

¶ 13. Mendoza was convicted of possessing a controlled substance with intent to deliver as a second or subsequent offense. He appealed and the court of appeals reversed, holding in part that the circuit court "failed to exercise its discretion by removing the four jurors for cause, solely because each had been convicted of a crime." *Mendoza*, 220 Wis. 2d at 813–14. The court of appeals concluded:

> § 972.03 grants each side not only the right to four peremptory challenges of its own, but also the right that the other side not be entitled to more than four peremptory challenges. Furthermore, we conclude that by erroneously granting the State's request to remove four jurors for cause, the trial court effectively granted the State four additional peremptory challenges. By effectively granting the State eight peremptory challenges, the trial court deprived Mendoza of his statutorily created right under § 972.03 that each side be "entitled to only 4 peremptory challenges." Therefore, we conclude that the trial court's erroneous removal of the four jurors requires reversal of Mendoza's conviction.

*Id.* at 816.

## ANALYSIS

¶ 14. This case presents the flip side of *State v. Ramos*, 211 Wis. 2d 12, 564 N.W.2d 328 (1997). In *Ramos*, we were faced with a situation in which the circuit court failed to dismiss a prospective juror for cause when the prospective juror should have been struck. This failure caused the defendant to use one of his peremptory strikes. We concluded that "the use of a peremptory challenge to correct a trial court error is

adequate grounds for reversal because it arbitrarily deprives the defendant of a statutorily granted right." *Id.* at 14.

¶ 15.  In this case, the circuit court did not fail to dismiss a prospective juror who should have been struck for cause; it struck four prospective jurors who arguably should *not* have been struck for cause. Mendoza argues that when the circuit court improperly struck four jurors on grounds that they had been convicted of a crime, it allowed the State eight peremptory challenges while he was allowed only four.

## I.

¶ 16.  We first examine whether the circuit court committed error when it struck four prospective jurors for cause because they had criminal records.

## A.

¶ 17.  The United States Constitution and Wisconsin's Constitution guarantee an accused an impartial jury. U.S. Const. amends. VI and XIV; Wis. Const., art. I, § 7.[4] To ensure an impartial jury, Wis. Stat. § 805.08(1) provides for juror disqualification if a prospective juror "is not indifferent in the case."

¶ 18.  This court has stressed that even the appearance of bias should be avoided. *State v. Louis,*

---

[4] The sixth amendment to the United States Constitution provides in part: "In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed. . . ." Wisconsin Constitution, art. I, § 7, provides in part: "In all criminal prosecutions the accused shall enjoy the right. . .in prosecutions by indictment, or information, to a speedy public trial by an impartial jury of the county or district wherein the offense shall have been committed. . . ."

156 Wis. 2d 470, 478, 457 N.W.2d 484 (1990); *see also State v. Ferron*, 219 Wis. 2d 481, 503, 579 N.W.2d 654 (1998); *Nolan v. Venus Motors, Inc.*, 64 Wis. 2d 215, 223, 218 N.W.2d 507 (1974); *Kanzenbach v. S.C. Johnson & Son, Inc.*, 273 Wis. 621, 627, 79 N.W.2d 249 (1956). In *Louis*, Justice Bablitch wrote in dissent that "It is the appearance of partiality that gives great pause. Jurors must not only be fair and impartial; they must also not have a relationship to either side which leaves doubt about their impartiality." *Louis*, 156 Wis. 2d at 486.

■

¶ 19.   In *State v. Faucher*, 227 Wis. 2d 700, 596 N.W.2d 770 (1999) (of even date), we clarified the terms we intend to use when examining juror bias. A prospective juror is biased, and should therefore be removed for cause, if the prospective juror is (1) statutorily biased, (2) subjectively biased, or (3) objectively biased. *Faucher* at 716.

## STATUTORY BIAS

■

¶ 20.   A prospective juror is statutorily biased if the prospective juror falls into one of the statutorily-recognized groups in Wis. Stat. § 805.08(1). Prospective jurors are statutorily biased if they are related by "blood or marriage to any party or to any attorney appearing in the case" or "[have] any financial interest in the case." § 805.08(1).[5] "Statutory bias is a conclu-

---

[5] We note that Wis. Stat. § 756.02 defines others who are qualified to serve as jurors. Section 756.02 states:

> Every resident of the area served by a circuit court who is at least 18 years of age, a U.S. citizen and able to understand the English language is qualified to serve as a juror in that circuit unless that

848

sion of law premised on the belief that certain relationships are so inherently prone to partiality that an individual case-by-case inquiry is not worth the time or effort." *State v. Kiernan*, 227 Wis. 2d 736, 744, 596 N.W.2d 760 (1999). Whether a prospective juror is statutorily biased and should be dismissed for cause involves the application of a statute to specific facts. This is a question of law that this court reviews *de novo. Id.*

## SUBJECTIVE BIAS

■

¶ 21.   A prospective juror is subjectively biased if the record reflects that the juror is not a reasonable person who is sincerely willing to set aside any opinion or prior knowledge that the prospective juror might have. *Id.* at 745. In *Faucher*, we stated that "subjective bias refers to the bias that is revealed by the prospective juror on *voir dire*: it refers to the prospective juror's state of mind." *Faucher* at 717. "Subjective bias" leads to a judicial determination that the juror is biased in fact. Subjective bias is usually discerned from the prospective juror's verbal responses to questions as well as the juror's demeanor in giving those responses. *Kiernan* at 745. "These observations are best within the province of the circuit court." *Id.* Therefore, whether a prospective juror is subjectively biased is a factual determination of the circuit court that will be upheld unless the decision is clearly erroneous.

resident has been convicted of a felony and has not had his or her civil rights restored.

By clear implication, a non-resident, a person less than 18 years of age, a non-citizen, and a person not able to understand English are not qualified to serve.

849

¶ 22.  A prospective juror is objectively biased if "a reasonable person in the prospective juror's position objectively could not judge the case in a fair and impartial manner." *State v. Erickson*, 227 Wis. 2d 758, 775, 596 N.W.2d 749 (1999). As an example, when there is evidence from voir dire that a prospective juror had formed an opinion or had prior knowledge, a court must ask if a reasonable person in the juror's position could set aside the opinion or prior knowledge. *Ferron*, 219 Wis. 2d at 498.[6] A court's determination of whether a prospective juror is objectively biased is a mixed question of fact and law. *Faucher* at 720. An appellate court should give weight to the circuit court's determination that a prospective juror is or is not objectively biased. *Id.* at 721. An appellate court will not reverse a circuit court's conclusion unless as a matter of law a reasonable judge could not have reached such a conclusion. *Id.* However, unlike the situation addressed in *Faucher*, a circuit court's determination that a group of people with similar characteristics is objectively biased is a question of law that we review *de novo*.

¶ 23.  In this case, the assistant district attorney asked the circuit court to strike four prospective jurors with criminal convictions. The circuit court granted the request and indicated that a fair and impartial jury

---

[6] Although a prospective juror may not have formed any opinion or have any prior knowledge about the case, the juror may have such ingrained attitudes about the subject of the case that a reasonable person in the juror's position objectively could not set aside his or her views and judge the case in a fair and impartial manner.

would be more likely by striking these jurors. By granting the State's request and striking the four prospective jurors for cause, the circuit court equated criminal conviction with cause. That was an error of law.

¶ 24.   Both the United States Supreme Court and this court have been reluctant to exclude groups of persons from serving as petit jurors as a matter of law. *Louis*, 156 Wis. 2d at 479; *Nolan*, 64 Wis. 2d at 223 (court refused to discharge all present or former employees of Sentry Insurance Company or their spouses). Rather, the circuit court has been given broad discretion to scrutinize and remove individual jurors in order to ensure that the final jury is impartial. *Louis*, 156 Wis. 2d at 479.

¶ 25.   We concluded in *Louis* that "law enforcement officials of the jurisdiction where the crime was committed should not be automatically disqualified from the petit jury as a matter of law." *Id.* at 474. "We see no rational reason why the question of whether individual law enforcement officials can serve impartially on the petit jury should be removed from the circuit court's discretion. Law enforcement officials are not among those groups the legislature has expressly excluded from jury service." *Id.* at 479–80.

¶ 26.   Under the laws of this state, criminal convictions do not automatically disqualify prospective jurors.[7] In 1996, Wis. Stat. § 756.01 provided that a

---

[7] This rule is contrary to common law. In *Nolan v. Venus Motors, Inc.*, 64 Wis. 2d 215, 223–24, 218 N.W.2d 507 (1974), Chief Justice Hallows quoted from *Brown v. Woolverton*, 121 So. 404, 406 (Ala. 1928): "[A]t common law the grounds for challenge were classified under four heads. . .(4) challenges propter delictum are for some misdemeanor or crime which affects the juror's credit and renders him infamous, as for conviction of

prospective juror had to be an elector of the state.[8] Wisconsin Stat. § 6.03(1)(b) provides that persons convicted of treason, felony, or bribery cannot be electors unless their civil rights are restored. A person's civil rights are restored, and the person is therefore an elector eligible to be a prospective juror, by serving out his or her term of imprisonment or otherwise satisfying his or her sentence. Wis. Stat. § 304.078.

¶ 27. We conclude that the circuit court erred when it granted the State's request to strike four prospective jurors for cause solely because they had been convicted of crimes. The court did not find that the four individual jurors were statutorily biased, subjectively biased, or objectively biased. Instead, the circuit court excluded an entire suspect group from serving as jurors.[9]

treason, felony, perjury, or conspiracy." *See also McCarten v. Connecticut Co.*, 131 A. 505, 508 (Conn. 1925), where the court noted that at common law a challenge would lie "for want of qualifications, as for. . .a prior conviction for certain infamous crimes . . ."

[8] Wisconsin Stat. § 756.01 was vacated by the repeal and recreation of Wis. Stat. §§ 756.001 to 756.03 by S. Ct. Order 96–08, effective July 1, 1997. See, now, Wis. Stat. § 756.02 (1997–98).

[9] *State v. Gesch*, 167 Wis. 2d 660, 482 N.W.2d 99 (1992), is the only case in which this court excluded an entire group of persons from serving as jurors. In *Gesch*, we held that "prospective jurors who are related to a state witness by blood or marriage to the third degree. . .must be struck from the jury panel on the basis of implied bias." *Id.* at 662. Under the terms recently adopted, the court in *Gesch* in effect recognized that the specific class of persons in question were objectively biased regardless of the surrounding facts and circumstances and the particular prospective juror's assurances of impartiality.

¶ 28.   The court may have considered that the prospective jurors convicted of crimes were, as a group, objectively biased, but such a determination would have been in conflict with the Wisconsin Statutes. We see no reason why a circuit court judge should not be able to determine individually whether prospective jurors convicted of crimes may serve impartially. But the court's blanket decision to strike a class of jurors was an error of law.

## B.

¶ 29.   Our review of the circuit court's decision to strike the four prospective jurors does not stop there. We review the record, juror by juror, to determine if it supports striking the four prospective jurors for cause.

¶ 30.   There is nothing in the record to suggest that the circuit court found any of the four jurors statutorily biased. Such a determination, if made, would have been an error of law. A prospective juror is statutorily biased only if the prospective juror is "related by blood or marriage to any party or to any attorney appearing in the case or has any financial interest in the case." Wis. Stat. § 805.08(1). The record contains no evidence that any of the prospective jurors struck for cause were related to any party or attorney in the case or had a financial interest in the case.

¶ 31.   There is also nothing in the record to suggest that the circuit court found the four jurors subjectively biased. A prospective juror must be struck for cause if the juror's state of mind reveals that the juror is biased in fact. Here the record reveals that each of the four prospective jurors assured the attorneys and the court that he could be fair and impartial. After assessing their honesty and credibility during voir dire,

the circuit court made no individual assessment that any juror was subjectively biased.

¶ 32. Finally, a prospective juror should be struck for cause if he. or she is objectively biased. As stated earlier, a prospective juror is objectively biased if "a reasonable person in the prospective juror's position objectively could not judge the case in a fair and impartial manner." *Erickson* at 775. We examine the four individual prospective jurors to determine whether the record supports a decision by the circuit court to strike them as objectively biased.

¶ 33. Crane C. had recently pled guilty to a charge of misdemeanor possession of cocaine and was sentenced to 16 days in jail. Crane C. expected to report to the Milwaukee House of Correction for incarceration within three weeks from the time he was questioned during voir dire. The facts in the record support a finding that Crane C. was objectively biased.

¶ 34. A reasonable judge could have concluded that Crane C. was not impartial because of his status as a recently convicted drug offender. He pled guilty to a cocaine charge within several months of appearing for Mendoza's cocaine trial and was about to serve his own sentence three weeks later. Crane C. was not a person convicted of a crime 30 years ago; he was a potential juror whose contact with the criminal justice system was recent and continuing.

¶ 35. The facts in the record support a finding that James M. was objectively biased. James M. not only disclosed that he had been convicted in Milwaukee County of armed robbery in 1966 and then two misdemeanors in 1982 or 1983 but also stated that he believed his sentence was too stiff for the armed robbery charge and that the sentence still bothered him. James M. further stated that he felt he should not have

been arrested for the incident in the early 1980s involving a concealed weapon and resisting an officer.[10] Mendoza's defense attorney admitted that James M. was among those jurors not "particularly happy" about his brush with the criminal justice system. The juror's statements provided evidence of residual hostility.

¶ 36. A person who is still bothered by the length of his sentence and does not accept responsibility for his actions many years after being convicted of a felony may not be impartial. Because this court has stressed that even the appearance of bias should be avoided, *Louis*, 156 Wis. 2d at 478, we find that the record supports a judicial decision to strike James M. for cause as an objectively biased juror.

¶ 37. Similarly, a reasonable judge could have concluded that Luciano R. was objectively biased. Luciano R. revealed he was convicted of burglary in 1994 in New York and incarcerated for eighteen months. He stated that he did not commit the burglary and that the woman who owned the burglarized building did not like him and accused him falsely. He also stated that he thought people are set up by others who do not like them. Right or wrong, Luciano R. was not accepting responsibility for his conduct; he was still showing resentment.

¶ 38. A person who believes he was once set up and that others are set up for crimes may not be an impartial juror. We find that, like James M., the record

---

[10] The circuit court did not know the nature of the concealed weapon, but the circuit court would have known that if the concealed weapon had been a firearm, the juror could have been charged with a felony—felon in possession of a firearm. Wis. Stat. § 941.29. The circuit court did not know the nature of the resisting charge, but it might have considered the possibility that the juror lied to the police. Wis. Stat. § 946.41.

supports a decision to strike Luciano R. for cause as an objectively biased juror. We could not say that no reasonable judge could reach that conclusion, especially a judge trying to avoid the appearance of bias.

¶ 39. Ike S. stands in sharp contrast to the other three prospective jurors. Ike S. disclosed that he pled guilty to burglary in Alabama about 30 years before. Unlike James M. and Luciano R., Ike S. stated he had no problem with the manner in which the police or prosecutor handled the case. There was no indication that he harbored any negative feelings that would affect his impartiality.

¶ 40. A prospective juror convicted of a crime more than 30 years earlier who does not harbor any apparent negative feelings after his run-in with the criminal justice system cannot be labeled as objectively biased. No reasonable judge could have concluded that Ike S. was objectively biased.

¶ 41. The trial court improperly struck the four prospective jurors for cause as a class on grounds that they were convicted criminals. While three of the four prospective jurors could have been struck for cause *individually* as objectively biased jurors, the other prospective juror, Ike S., was struck erroneously as the record revealed no factual or legal grounds for his dismissal.

II.

¶ 42. Having determined that the circuit court erred by removing prospective juror Ike S., we must determine whether automatic reversal is required.

¶ 43. Mendoza claims, and the court of appeals held, that improperly granting the State's motion to remove a prospective juror for cause effectively granted

856

the State four additional peremptory challenges and deprived Mendoza of his statutorily created right to an equal number of peremptory strikes. The court of appeals held that under *Ramos* such a deprivation requires reversal of Mendoza's conviction. *See Mendoza*, 220 Wis. 2d at 816.

¶ 44.  Wisconsin Stat. § 972.03 provides, in part: "Each side is entitled to *only* 4 peremptory challenges except as otherwise provided in this section. . . ." (emphasis supplied) We agree with the conclusion that "by using the word 'only,' the legislature clearly intended to limit each side to four, and only four, peremptory challenges." *Mendoza*, 220 Wis. 2d at 816. We also agree that "§ 972.03 grants each side not only the right to four peremptory challenges of its own, but also the right that the other side not be entitled to more than four peremptory challenges." *Id.*

¶ 45.  We do not agree, however, that the circuit court effectively granted the State four additional peremptory challenges and deprived Mendoza of his statutorily created right to equality, requiring reversal of his conviction.

¶ 46.  The circuit court erred as to only one prospective juror. After reviewing the law, we conclude that the erroneous dismissal did not grant the State an additional peremptory strike.

¶ 47.  Challenging a juror for cause is different from removing a juror through a peremptory strike. There are no limits on challenges for cause. A defendant may move for a change of the place of trial on grounds that an impartial jury cannot be had in the county.[11] This amounts to challenging the county's entire jury pool for cause. Normally, of course, chal-

---

[11] *See* Wis. Stat. § 971.22(1).

857

lenges for cause are targeted to remove prospective jurors "on a narrowly specified, provable, and legally cognizable basis of partiality." *Swain v. Alabama,* 380 U.S. 202, 220 (1965), overruled on other grounds by *Batson v. Kentucky,* 476 U.S. 79 (1986). Because of the Sixth Amendment right to an impartial jury, challenging a juror for cause frequently implicates constitutional rights.

¶ 48. Peremptory challenges are qualitatively different. Peremptory strikes—challenges without cause, without explanation, and without judicial scrutiny—afford a suitable and necessary method of securing juries which in fact and in the opinion of parties are fair and impartial. *Swain,* 380 U.S. at 212.[12]

> The persistence of peremptories and their extensive use demonstrate the long and widely held belief that peremptory challenge is a necessary part of trial by jury. . . .The function of the challenge is not only to eliminate extremes of partiality on both sides, but to assure the parties that the jurors before whom they try the case will decide on the basis of the evidence placed before them, and not otherwise. In this way the peremptory satisfies the rule that "to perform its high function in the best way 'justice must satisfy the appearance of justice.' " *In re Murchison,* 349 U.S. 133, 136.

*Swain,* 380 U.S. at 219.

¶ 49. In *Ross v. Oklahoma,* 487 U.S. 81, 88 (1988), the Supreme Court described peremptory challenges as "a means to achieve the end of an impartial jury." Because peremptory challenges are a creature of

---

[12] The phrase "without judicial scrutiny," lifted from the *Swain* case, is no longer valid. *See Batson v. Kentucky,* 476 U.S. 79, 100 (1986). Even peremptory challenges can raise questions.

statute and are not required by the Constitution, it is for the State to determine the number of peremptory challenges allowed and to define their purpose and the manner of their exercise. *Id.* at 89.

¶ 50.   In *Jones v. State*, 982 S.W.2d 386 (Tex. Crim. App. 1998), the Texas Court of Criminal Appeals found that the trial court had erroneously granted the State's challenge to a prospective juror. *Id.* at 390. In response to the defendant's argument that the erroneous dismissal of the prospective juror effectively granted the State an extra peremptory, the court stated:

> Challenges for cause go to legal qualifications of jurors, whereas peremptory challenges are used to eliminate jurors who are thought (or felt) to be undesirable on a partisan evaluation. A juror's disqualification is not related to the juror's desirability. It is especially wrong to equate the State's challenge for cause to a peremptory challenge, because the State has the right to challenge disqualified jurors even when their disqualifications might seem to make them favor the State.

*Id.* at 393.

¶ 51.   We agree with the Texas analysis. A peremptory challenge entails the right to challenge a juror without assigning, or being required to assign, a reason for the challenge. BLACK'S LAW DICTIONARY 1136 (6th ed. 1990). This is a self-interested act designed to rid the jury panel of those who a party believes may be unreceptive to the party's position. Challenges for cause, on the other hand, seek a legal determination by the circuit court that the prospective juror in question is, under the law, unqualified or biased and should not

serve on the jury. These are two very distinct occurrences.

¶ 52. The erroneous dismissal of a prospective juror constitutes an error by the court; it does not compute as a peremptory challenge by a party. We decline to recognize the erroneous dismissal of a juror for cause as an additional peremptory challenge. Consequently, the defendant was not denied an equal number of peremptory strikes.

¶ 53. In this case, both the defendant and the State had four peremptory strikes. We agree with the court of appeals on the importance of maintaining an equal number of peremptory strikes in two-party cases.[13] If we recognized erroneous dismissals for cause as extra peremptory challenges and directed new trials to deter such dismissals, our rule would adversely impact the State but not affect the defendant.[14] Technically, both parties would be equal; but one party would be "more equal" than the other. Moreover, there would be a chilling effect on the State's motions to strike because an erroneous dismissal would automatically require a new trial.

¶ 54. Because we determine that the erroneous dismissal of a prospective juror does not result in an additional peremptory strike, the error by the circuit court did not deprive Mendoza of the right to an equal

[13] We note that, under Wis. Stat. § 972.03, individual defendants are not treated the same as the State when there are multiple defendants.

[14] We believe Jacqueline D. was properly removed for cause. But the circuit court did not offer any particularized reason for her removal. Consequently, her removal stands on the same footing as Crane C., James M., and Luciano R.

number of peremptory strikes. Both Mendoza and the State exercised their four allotted peremptory challenges. No right was violated by the court's error, and so reversal under *Ramos* is not available.

¶ 55.   Even if we recognized the erroneous dismissal of Ike S. as giving the State an extra peremptory challenge, we would decline to extend *Ramos* to these facts.

¶ 56.   *Ramos* involved a defendant on trial for first degree intentional homicide. *Ramos*, 211 Wis. 2d at 14. During voir dire, a prospective juror revealed that she could not be fair to the defendant. *Id.* The judge refused to believe the juror had admitted bias, refused to have the transcript read back in court, and refused to remove the prospective juror for cause. Ramos then struck the juror with one of his peremptories. *Id.* at 14–15. We found that the failure to dismiss the prospective juror for cause was an erroneous exercise of discretion. *Id.* at 16. We ultimately concluded that "the use of a peremptory challenge to correct a trial court error is adequate grounds for reversal because it arbitrarily deprives the defendant of [the statutorily granted right to exercise all seven of his peremptory challenges]." *Id.* at 24–25.

¶ 57.   This case presents the flip side of *Ramos*: a court's erroneous dismissal of a prospective juror as opposed to a court's erroneous failure to dismiss. The key distinction between *Ramos* and this case is the long-standing principle that courts should liberally grant requested strikes for cause. We encourage circuit courts to liberally grant requested strikes for cause to avoid the appearance of bias. *Ferron*, 219 Wis. 2d at 495–96; *Ramos*, 212 Wis. 2d at 29–30 (Abrahamson, C.J., concurring); *Kanzenbach v. S.C. Johnson & Son, Inc.*, 273 Wis. 621, 627, 79 N.W.2d 249 (1956)

("[B]ecause it preserves the appearance as well as the reality of an impartial trial, it is a good rule for the trial judge to honor challenges for cause whenever [the judge] may reasonably suspect that circumstances outside the evidence may create bias or an appearance of bias on the part of the challenged juror.").

¶ 58.   In *Ramos*, the court's failure to follow this salutary principle deprived the defendant of his full complement of peremptory strikes. In this case, the defendant was not required to correct an erroneous dismissal; he was allowed to use all his peremptory strikes as he saw fit and not required to use any to correct an error.

¶ 59.   There is another subtle yet important distinction between *Ramos* and this case. In *Ramos*, the court's error solely affected the defendant's right. In this case, the court's error affected two competing interests: Mendoza's right to an equal number of strikes and the circuit court's important discretionary power to strike jurors to avoid the appearance of bias. In the long run, a court's discretionary power to remove questionable jurors and avoid the appearance of bias outweighs the right of parties to an equal number of strikes. Over time the court's discretionary power is likely to accomplish more to attain impartial juries than the exercise of peremptories.

¶ 60.   The United States Supreme Court has concluded that not every error, even constitutional error, requires automatic reversal of a conviction. *See Chapman v. California*, 386 U.S. 18, 22 (1967). The Supreme Court also has recognized that an erroneous dismissal of a prospective juror does not automatically require reversal if an impartial jury was impaneled. In *Northern Pacific R. Co. v. Herbert*, 116 U.S. 642, 646 (1886), the Supreme Court stated:

[The prospective juror] was. . .challenged, and the allowance of the challenge constitutes the first error assigned. . . .[I]f we regard the challenge as for cause, its allowance did not prejudice the company. A competent and unbiased juror was selected and sworn, and the company had, therefore, a trial by an impartial jury, which was all it could demand.

¶ 61.   Several federal courts and numerous state courts have recognized the principle enunciated in *Northern Pacific*, and applied it in the criminal arena.[15]

¶ 62.   A defendant is entitled to fair and impartial jurors, not jurors whom he hopes will be favorable towards his position. *See Pollack v. State*, 215 Wis. 200, 207–08, 253 N.W.2d 560 (1934), overruled in part by *State ex rel. Goodchild v. Burke*, 27 Wis. 2d 244, 133 N.W.2d 753 (1965). A defendant's rights go to those who serve, not to those who are excused.

¶ 63.   We therefore hold that automatic reversal is not required when a circuit court erroneously grants

---

[15] *See, e.g., United States v. Gonzalez-Balderas*, 11 F.3d 1218, 1222 (5th Cir. 1994), *cert. denied*, 511 U.S. 1129 (1994); *United States v. Prati*, 861 F.2d 82, 87 (5th Cir. 1988); *Shettel v. United States*, 113 F.2d 34, 36 (D.C. Cir. 1940); *State v. Walden*, 905 P.2d 974, 988 (Ariz. 1995), *cert. denied*, 517 U.S. 1146 (1996); *People v. Holt*, 937 P.2d 213 (Cal. 1997); *Wheeler v. People*, 165 P. 257, 258 (Colo. 1917); *Wells v. State*, 404 S.E.2d 106, 107 (Ga. 1991); *State v. Clark*, 278 P. 776, 777–78 (Idaho 1929); *State v. Kendall*, 203 N.W. 806, 807 (Iowa 1925); *Hunt v. State*, 583 A.2d 218, 234 (Md. 1990); *State v. Hurst*, 193 N.W. 680, 682 (Minn. 1922); *State v. Hill*, 827 S.W.2d 196, 199 (Mo. 1992); *State v. Huffman*, 296 P. 789, 790 (Mont. 1931); *Bufford v. State*, 26 N.W.2d 383, 386 (Neb. 1947); *State v. Martinez*, 278 P. 210, 210–11 (N.M. 1929); *State v. Carson*, 249 S.E.2d 417, 423 (N.C. 1978); *State v. Wells*, 103 S.E. 515, 516 (S.C. 1920); *State v. Larkin*, 228 P. 289, 289 (Wash. 1924).

a party's motion to strike a prospective juror for cause. To hold otherwise would undermine our long-standing assertion that circuit court judges should liberally grant requests to strike prospective jurors for cause.

¶ 64. We stated in *Ferron* that "[t]he circuit courts are. . .advised to err on the side of striking prospective jurors who appear to be biased, even if the appellate court would not reverse their determinations of impartiality. Such action will avoid the appearance of bias, and may save judicial time and resources in the long run." *Ferron*, 219 Wis. 2d at 503. This continues to be sound policy.

■

¶ 65. Reversal is not required in this case. Instead, we employ a harmless error analysis. Wisconsin Stat. § 805.18 provides that an error is harmless if it does not effect the substantial rights of the party seeking reversal of the judgment. Section 805.18 is applicable to criminal cases pursuant to Wis. Stat. § 972.11(1). *State v. Dyess*, 124 Wis. 2d 525, 547, 370 N.W.2d 222 (1985). Mendoza concedes that an impartial jury convicted him. His statutory right to an equal number of peremptory strikes was not violated by the erroneous dismissal of a prospective juror. Therefore, we conclude the circuit court's error was harmless.

## CONCLUSION

¶ 66. In sum, we conclude that the circuit court erroneously dismissed one of the four prospective jurors in question. But this erroneous dismissal does not require a reversal of Mendoza's conviction. The erroneous dismissal did not affect any of Mendoza's substantial rights and was therefore harmless. We accordingly reverse the decision of the court of appeals.

*By the Court.*—The decision of the court of appeals is reversed.