STATE of Wisconsin, Plaintiff-Respondent,

v.

Scot A. CZARNECKI, Defendant-Appellant.

Court of Appeals

*No. 98–2406–CR. Submitted on briefs May 21, 1999.—Decided September 1, 1999.*

(Also reported in 604 N.W.2d 891.)

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Patrick M. Donnelly*, assistant state public defender.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *James E. Doyle*, attorney general, and *Sharon Ruhly*, assistant attorney general.

Before Nettesheim, Anderson and Snyder, JJ.

SNYDER, J. The issue presented in this case is whether a prospective juror who is the brother-in-law of a state witness must be struck for cause as a "relative by blood or marriage to the third degree of a state witness." *State v. Gesch*, 167 Wis. 2d 660, 669, 482 N.W.2d 99, 103 (1992). Because we conclude that a brother-in-law relationship constitutes "statutory bias," we reverse the judgments and the order of the trial court and remand for a new trial.

## BACKGROUND

The pertinent facts are undisputed. Scot A. Czarnecki was arrested and charged with burglary while armed with a dangerous weapon with intent to commit a felony contrary to § 943.10(1)(a) and (2)(a), STATS.; attempted first-degree homicide while armed with a dangerous weapon contrary to §§ 940.01(1), 939.32(1)(a) and 939.63(1)(a)2, STATS.; and attempted first-degree sexual assault by use or threat of use of a dangerous weapon contrary to §§ 940.225(1)(b) and 939.32(1), STATS. These charges were amended to include additional counts of burglary while armed with a dangerous weapon with intent to commit homicide contrary to § 943.10(1)(a) and (2)(a); disorderly conduct while armed with a dangerous weapon contrary to §§ 947.01 and 939.63(1)(a)1, STATS.; and criminal tres-

pass to dwelling while armed with a dangerous weapon contrary to §§ 943.14 and 939.63(1)(a)1, STATS.[1]

During jury selection on August 11, 1997, prospective juror Robert Schneider indicated that he was related to state witness Larry Meyer, the city of Whitewater police detective who investigated Czarnecki's case. Schneider explained that he was Meyer's brother-in-law because he was married to Meyer's sister. The prosecuting attorney then inquired whether this relationship would influence Schneider's decision making:

> [DISTRICT ATTORNEY]: Because of that, do you feel an obligation to decide one way or the other in favor of the state's case?
>
> [PROSPECTIVE JUROR] SCHNEIDER: I don't believe so.
>
> [DISTRICT ATTORNEY]: Can you judge his testimony and his credibility the same as any other witness that you've never met or seen before?
>
> SCHNEIDER: Yes, I think I can.

At the end of voir dire, Czarnecki's counsel moved the court to strike Schneider for cause:

> Yeah, judge, before we go out of here, let me make a formal motion. I am going to move to excuse Mr. Schneider for cause. I know he says that it's not going to affect him. I think that under the circumstances of the relationship between him and the chief investigator in the case, it's asking more than is humanly possible.

The court denied the motion, stating that

---

[1] The armed burglary with intent to commit a felony count was amended to specifically address sexual assault.

> [o]rdinarily I'd . . . sympathize with [defense counsel's] position. In fact, I was surprised, but Mr. Schneider was very adamant, he's totally independent of what Mr. Meyer says and will make his own decisions. I can't in good conscience remove him just simply because of the relationship when his testimony is clearly that it has no effect whatsoever.

After the court's ruling, Czarnecki used a peremptory strike to remove Schneider from the jury pool.

Czarnecki was subsequently convicted of burglary while armed with a dangerous weapon with intent to commit sexual assault and to commit homicide, attempted first-degree sexual assault by use or threat of use of a dangerous weapon, disorderly conduct while armed with a dangerous weapon, and criminal trespass to a dwelling while armed with a dangerous weapon.[2] Following his conviction, Czarnecki filed a postconviction motion asking the trial court to set aside his conviction based on the court's error in refusing to strike Schneider from the jury panel. The court denied his motion and he now appeals from the judgments and the order denying postconviction relief.

## DISCUSSION

Czarnecki argues that the trial court erred during jury selection when it failed to strike for cause a prospective juror who was the brother-in-law of a state witness. He relies on *Gesch* for the proposition that a relative by marriage to the third degree should be struck on the basis of implied bias. The State responds that the language in *Gesch* pertaining to juror bias on the basis of a relationship created by marriage is dicta.

---

[2] Czarnecki was acquitted of attempted first-degree homicide while armed with a dangerous weapon.

Because we conclude that *Gesch* is controlling, we reject the State's position.

In *Gesch*, our supreme court held that an "implied bias" existed where a potential juror was the brother of the state's police witness. The court established the following per se rule:

> [P]rospective jurors who are related to a state witness *by blood or marriage to the third degree* as shown in Figure 852.03(2), STATS.,[3] must be struck from the jury panel on the basis of implied bias.

*Gesch*, 167 Wis. 2d at 671, 482 N.W.2d at 104 (emphasis added). Failure to strike on this ground is "a violation of the defendant's rights under the Sixth Amendment of the United States Constitution, the Wisconsin Constitution Article I, Section 7, and is violative of the principles of due process." *Id.* Where a fair and impartial jury is impaneled, a trial court's failure to properly remove a juror for cause violates the defendant's right to exercise all of his or her statutorily granted peremptory challenges. *See State v. Ramos*, 211 Wis. 2d 12, 24, 564 N.W.2d 328, 334 (1997).

While we agree with the State that the facts in *Gesch* only involved the issue of bias between brothers related by blood, we are no less convinced that the court's per se rule applies with equal force to persons related by marriage. As the *Gesch* court recognized:

> [W]here a prospective juror is related to a state witness by blood *or* marriage to the third degree, special problems exist that render a circuit court's search for actual bias an inadequate protection of a defendant's right to an impartial jury. One such

---

[3] Figure 852.03(2), STATS., shows the degrees of kinship for purposes of determining intestate succession.

problem is the potential for unconscious bias. It is virtually impossible for a prospective juror to consciously estimate how the family relationship with a witness will affect his or her judgment. Although no intentional actual bias may exist, the risk of unconscious bias in these situations is manifest.

*Gesch*, 167 Wis. 2d at 667, 482 N.W.2d at 102 (emphasis added).

In the present matter, although Schneider testified that he perceived no problem with being a juror on a case in which his brother-in-law was directly involved, the familial relationship here carries the potential for unconscious prejudice. Where a family relationship exists, "the mere probability of bias is so high that in order to assure a defendant the fundamental fairness to which the defendant is entitled, we must imply bias and exclude the juror as a matter of law." *Id.* at 668, 482 N.W.2d at 102. While the *Gesch* court's pronouncement may technically be dicta, the State concedes that it is "nevertheless [an] administrative or supervisory direction[ ] that [is] intended for the guidance of the court system and [is] to be followed." *State v. Koput*, 142 Wis. 2d 370, 386 n.12, 418 N.W.2d 804, 811 (1988). We are persuaded that the *Gesch* court's per se rule concerning implied juror bias is intended to offer guidance to the courts and we choose to follow it here.

Pursuant to *Gesch*, we apply the chart depicted in Figure 852.03(2), STATS., to both blood relations and relations created by marriage. Based on Figure 852.03(2), we determine that both a brother and a brother-in-law are two degrees removed for purposes of determining juror bias. In the instant case, because Schneider was the brother-in-law of a state witness, we conclude that he was related within three degrees of

the witness. Thus, we agree with Czarnecki that the trial court erred because Schneider should have been struck as a matter of law on the basis of his potential bias.

While a brother-in-law relationship constitutes an "implied bias" under *Gesch*, our supreme court has recently reexamined the designations used in juror bias jurisprudence. In *State v. Faucher*, 227 Wis. 2d 700, 596 N.W.2d 770 (1999), the court sought to eliminate the confusion surrounding the use of the terms "implied bias," "actual bias" and "inferred bias" by creating three new designations: "statutory bias," "subjective bias" and "objective bias." *See id.* at 706, 596 N.W.2d at 773. "Statutory bias," as defined in § 805.08(1), STATS.,[4] exists where a prospective juror is related by "blood or marriage to any party or to any attorney appearing in [the] case" and where a prospective juror has "any financial interest in the case." *Faucher*, 227 Wis. 2d at 717, 596 N.W.2d at 778 (quoting § 805.08(1); alteration in original). Statutory bias is a "conclusion of law premised on the belief that certain relationships are so inherently prone to partiality that an individual case-by-case inquiry is not worth the time or effort." *State v. Kiernan*, 227 Wis. 2d 736, 744, 596 N.W.2d 760, 764 (1999). "Subjective bias" is also addressed by § 805.08(1) and concerns whether the prospective juror has "expressed or formed any opin-

---

[4] Section 805.08(1), STATS., provides in relevant part that

[t]he court shall examine on oath each person who is called as a juror to discover whether the juror is related by blood or marriage to any party or to any attorney appearing in the case, or has any financial interest in the case, or has expressed or formed any opinion, or is aware of any bias or prejudice in the case. If a juror is not indifferent in the case, the juror shall be excused. Any party objecting for cause to a juror may introduce evidence in support of that objection.

ion, or is aware of any bias or prejudice in the case," *id.*, and it is "revealed through the words and demeanor of the prospective juror," *Faucher*, 227 Wis. 2d at 717, 596 N.W.2d at 778. Finally, as to "objective bias," we consider the facts and circumstances surrounding voir dire along with the facts in the case and then decide "whether [a] reasonable person in the individual juror's position could be impartial." *Id.* at 718, 596 N.W.2d at 779.

■

Consistent with *Faucher*, we conclude that the present case involves "statutory bias." Whether a prospective juror is statutorily biased is a question of law that this court reviews de novo. *See State v. Mendoza*, 227 Wis. 2d 838, 849, 596 N.W.2d 736, 742 (1999). We follow the per se rule of *Gesch* in extending statutory bias to any relationship "by blood or marriage to the third degree." *Gesch*, 167 Wis. 2d at 671, 482 N.W.2d at 104. As we have already determined, prospective juror Schneider's brother-in-law relationship with state witness Meyer qualifies as a relationship by marriage to the third degree.

■

The trial court's failure to strike Schneider for cause violated Czarnecki's right to exercise all of his statutorily provided peremptory challenges. *See Ramos*, 211 Wis. 2d at 24, 564 N.W.2d at 334. Because the use of a peremptory challenge to correct trial court error deprives a defendant of a statutorily guaranteed right, reversal is the appropriate remedy. *See id.* at 24–25, 564 N.W.2d at 334.

■

The State contends, however, that the court's failure to strike Schneider for cause does not warrant reversal because both Czarnecki and the State received

one more peremptory strike than they were entitled to under § 972.03, STATS. The State's argument lacks merit. In *State v. Mendoza*, 220 Wis. 2d 803, 816, 584 N.W.2d 174, 179 (Ct. App. 1998), *rev'd on other grounds*, 227 Wis. 2d 838, 596 N.W.2d 736 (1999), we concluded that § 972.03 "grants each side not only the right to four peremptory challenges of its own, but also the right that the other side not be entitled to more than four peremptory challenges."[5] Our supreme court concurred with this rule, acknowledging "the importance of maintaining an equal number of peremptory strikes in two-party cases." *Mendoza*, 227 Wis. 2d at 860, 596 N.W.2d at 747. Here, Czarnecki and the State were not provided an equal number of peremptory strikes because Czarnecki was required to use one strike in order to remove a juror whom the court should have struck for cause. Thus, Czarnecki's statutory right to exercise all of his peremptory strikes was infringed.

■

The State next claims that Czarnecki waived any argument in reliance on *Gesch* because he failed at trial to cite *Gesch* or make reference to *Gesch*'s per se rule of exclusion. We disagree. Toward the end of the jury selection process, Czarnecki's counsel moved to strike Schneider on the grounds of his familial relationship with a state witness:

> I am going to move to excuse Mr. Schneider for cause. I know he says that it's not going to affect him. I think that under the circumstances of the relationship between him and the chief investigator

---

[5] Here, the trial court granted each side six peremptory challenges, although life imprisonment was not considered. *See* § 972.03, STATS.

10

in the case, it's asking more than is humanly possible.

In subsequently relying on the *Gesch* rule, Czarnecki does not raise a new issue but is providing further support for his position. *See State v. Greenwold,* 181 Wis. 2d 881, 884 n.1, 512 N.W.2d 237, 238 (Ct. App. 1994). In addition, because "[t]he peremptory challenge is one of the most important of the rights secured to the accused," *Gesch,* 167 Wis. 2d at 671, 482 N.W.2d at 104, we are hesitant to declare waiver simply because the defendant failed to cite a particular case or name a particular legal theory.

The State further contends that even if the trial court erroneously exercised its discretion in not removing juror Schneider for cause, such an error was negated by the fact that the State also had expended one of its peremptory strikes to remove a juror who should have been struck for cause. We reject the State's argument because it failed to make a timely challenge for cause.

The trial court initially excused prospective juror Paul Barrett because he was the court commissioner who had set bail in Czarnecki's case. However, toward the close of jury selection, Barrett's name was mentioned and Czarnecki's counsel indicated that he had no objection to Barrett being impaneled. The court stated that if the defense did not complain, it would reinstate Barrett on the jury panel. The district attorney replied, "He's excused, I think he should stay excused." Czarnecki's counsel, however, insisted that he had no objection to Barrett's participation. The court therefore kept Barrett as a juror. At the close of jury selection, the State exercised one of its peremptory strikes to remove him.

11

In *State v. Brunette*, 220 Wis. 2d 431, 442, 583 N.W.2d 174, 179 (Ct. App.), *review denied*, 220 Wis. 2d 366, 585 N.W.2d 158 (1998), we concluded that a defendant waives an objection to juror bias if prior to the jury being sworn in no motion is made to the trial court to remove a juror for cause. We explained that a juror bias claim is subject to waiver because the trial court and prosecutor are in a position to correct errors, thereby avoiding any unnecessary reversals, and the decision about whom to select as jurors should be made when the recollections of counsel and the court are fresh. *See id.* at 441, 583 N.W.2d at 178. We stressed the importance of the trial court's role in deciding whether to dismiss a juror due to bias because the court has the ability to judge the demeanor of the juror and can make a ruling based on its contemporaneous impressions. *See id.* at 441–42, 583 N.W.2d at 178–79. Because Brunette did not make a timely objection, his argument could not be sustained.

While the State is not seeking reversal of the trial court's decision on grounds of juror bias, as Czarnecki is, we nonetheless conclude that the State is precluded from relying on a claim of juror bias for reasons similar to those set forth in *Brunette*. Like Brunette's challenge, the State did not attempt to strike Barrett for cause during voir dire. The State's only ground for objection was that Barrett had been previously excused; it offered no substantive basis for Barrett's dismissal. The court therefore never made a contemporaneous determination of Barrett's potential for bias. The same problem existed in *Brunette*. While the court had excused Barrett on the basis of his having set bail in Czarnecki's case, it later found compelling Czarnecki's assertion that he had no objection to Barrett being impaneled.

We reject the State's position that Barrett should have been struck for cause because the State failed to object during voir dire. To conclude otherwise would permit the State to subvert the trial court's role of addressing potential juror bias before the jury is sworn. Because the State did not properly object, the court was not provided an opportunity to assess Barrett's demeanor. We decline to make that determination on appeal.

Finally, we note that Czarnecki raises an alternative argument in requesting that we order a new sentencing hearing on the grounds that the two burglary counts under § 943.10(1)(a) and (2)(a), STATS., were multiplicitous. Because we conclude that the trial court erred by not following a per se rule of juror disqualification, we need not reach this argument. However, because the State concedes that the two burglary counts were multiplicitous, we reverse and remand with instructions that the trial court permit only one count of burglary.

*By the Court.*—Judgments and order reversed and cause remanded with directions.