COURT OF APPEALS
DECISION
DATED AND FILED

April 15, 2025

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2023AP1591-CR**

STATE OF WISCONSIN

Cir. Ct. No. 2019CF4289

IN COURT OF APPEALS
DISTRICT I

---

STATE OF WISCONSIN,

　　　　PLAINTIFF-RESPONDENT,

　V.

ROMANCE XAVIER GUNN,

　　　　DEFENDANT-APPELLANT.

---

　　　　APPEAL from a judgment and an order of the circuit court for Milwaukee County: DAVID L. BOROWSKI, Judge. *Affirmed*.

　　　　Before White, C.J., Donald, P.J., and Colón, J.

　　　　**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1     PER CURIAM.   Romance Xavier Gunn appeals from a judgment of conviction entered after a jury trial in which he was found guilty of five felonies and an order denying his postconviction motion requesting a new sentencing hearing.  He argues that the trial court erroneously struck a potential juror for cause, and that trial counsel was ineffective for failing to find and present mitigating circumstances at sentencing.  We reject Gunn's arguments and affirm.

## BACKGROUND

¶2     According to the criminal complaint, on September 19, 2019, Gunn participated in a gunfight, shooting across a Milwaukee street.  Joanna, who was driving down the street, was caught in the cross-fire and killed by a stray bullet.[1] Two children and Joanna's twin sister were passengers in the car at the time. Gunn was charged with first-degree reckless homicide using a dangerous weapon as a party to a crime and possession of a firearm by a felon.  Subsequently, three charges of first-degree recklessly endangering safety using a dangerous weapon as a party to a crime were added.

¶3     Gunn proceeded to trial and a jury found him guilty of all five counts as charged.  Gunn was sentenced to thirty years of initial confinement and twenty years of extended supervision.[2]

---

[1] Although not required by WIS. STAT. RULE 809.86 (2023-24), we refer to the homicide victim in this case using a pseudonym to protect her family's privacy.  We adopt the pseudonym used by Gunn on appeal.  All references to the Wisconsin Statutes are to the 2023-24 version unless otherwise noted.

[2] After the jury trial, Gunn's attorney withdrew, and new counsel was appointed to represent Gunn at sentencing.

¶4     Gunn filed a postconviction motion seeking a new sentencing hearing on the grounds that trial counsel was ineffective for failing to find and present mitigating circumstances at sentencing. The motion included a five-page report prepared by Badger State Investigative Services, LLC, which provided a detailed history of Gunn's upbringing, neglect by his parents, incidents of sexual abuse, homelessness, and personal losses, such as the death of his mother when Gunn was fourteen.[3] The letter also noted that Gunn was previously employed at McDonalds for six to nine months, was viewed as a hard working crew member who got along well with others, and his former boss was willing to hire Gunn again if he became available to work.

¶5     The trial court denied Gunn's postconviction motion without a hearing. The court found that even if trial counsel performed deficiently, the proffered mitigating factors "would not have altered the court's sentencing decision in any respect." The court also noted that Gunn refused to be interviewed by the presentence investigation writer, and had Gunn agreed to be interviewed, he could have provided the writer with the information that he now presents as mitigating. Gunn appeals. Additional relevant facts are discussed below.

## DISCUSSION

¶6     On appeal, Gunn argues that the trial court erred in removing one of the potential jurors for cause. Gunn additionally renews his argument that trial

---

[3] The report indicated that the information was obtained from interviews with multiple people, including Gunn, several of his family members, his children's mother, and his former boss. Additionally, information was obtained from Gunn's student records, juvenile records, and criminal court files.

counsel was ineffective for failing to find and present mitigating factors at sentencing. We address each of Gunn's arguments below.

## I.  Juror Challenge

¶7  Relevant to this appeal, during *voir dire*, the State inquired whether any of the jurors had "any kind of bias or preconceived idea that they would never convict someone, for example, if they didn't hear DNA evidence or any other particular kind of evidence[.]"  Juror 3 responded that, "I work as a security consultant, and I think that a lot of times eyewitness testimony is inherently faulty."  The following exchange then occurred:

> [Prosecutor]:  Okay.  Do you understand that all eyewitness testimony isn't necessarily apparently faulty, though?
>
> [Juror 3]:  That's true but I have found that there's different things like time dilation or—
>
> [Trial Court]:  Hang on.  We're not going there.  We're not going there.  I don't want a speech from any of the jurors. Answer the district attorney's questions and that's it. Please, don't go there.
>
> [Juror 3]:  Okay.
>
> [Prosecutor]:  So I think if I understand correctly that you have some maybe even professional experience where the issues of like aspects that can impact the reliability of eyewitness testimony, something you're familiar with; is that correct?
>
> [Juror 3]:  That's correct.

Subsequently, when asked about listening to the testimony and applying the law without reliance on any preconceived notions about eyewitness testimony, Juror 3 responded, "I would do my best, yes."

¶8    Later, while discussing strikes for cause with the parties, the trial court referenced Juror 3.  The court stated:

> Juror No. 3 is a white male.  He has what's clearly a female name.  Now what his gender is or what he wishes his gender to be is not my concern.  My concern would be that—and I really don't like it when jurors do this—when they start to go off on a tangent and tell the jury or tell the lawyers or tell the court how things work.  And he said he's a security guard and said, well, I know that—[]he said something like witness identifications are notoriously unreliable.  That's off of memory.  Then he started piping up with some theory or acronym or some program or alleged evidence that he believes this to be the case from.  I'm very concerned about Juror 3.

¶9    The State responded that Juror 3's statements about "his beliefs on eyewitness testimony suggests that he … might shut down with it and not really evaluate it because he holds a preconceived notion[.]"

¶10    Gunn's attorney responded that he "appreciate[d] everyone's position" and noted that Juror 3 "did say he could be fair."  However, Gunn's attorney then stated that the State "could use one of their strikes."

¶11    The trial court struck Juror 3 for cause.  The court agreed with the State, noting that based on Juror 3's "body language [and] his volunteering of information" it appeared that Juror 3 "had a chip-on-his shoulder attitude about basically, well, eyewitness testimony is inherently unreliable or no one believes that."  The court did not believe that Juror 3 could be fair and impartial and "would be disinclined to listen to my orders."

¶12    Gunn argues that the trial court should not have struck Juror 3.  Gunn contends that the court's concerns about Juror 3 were not supported by the record and Juror 3 was not objectively biased.  Gunn also suggests that the court had a discriminatory reason for striking Juror 3, or in other words, committed a

*Batson* violation. *See Batson v. Kentucky*, 476 U.S. 79 (1986). According to Gunn, "[t]he strike may have underlying gender based discrimination."

¶13 The State responds that Gunn's arguments are not properly before this court. We agree. Even if we were to construe Gunn's attorney's statement that Juror 3 "did say that he could be fair" as an objection, Gunn's attorney's subsequent statement that the State "could use one of their strikes" relinquished any challenge to Juror 3's removal. Moreover, the objection lacked any specificity. Gunn's attorney did not object to the removal of Juror 3 on *Batson* grounds. *See State v. Jones*, 218 Wis. 2d 599, 601, 581 N.W.2d 561 (Ct. App. 1998) ("[T]he defendant must make a *Batson* objection prior to the time the jury is sworn. If the objection is not made until after that time, the issue is [forfeited].""); *see also State v. Nielsen*, 2001 WI App 192, ¶11, 247 Wis. 2d 466, 634 N.W.2d 325 ("[T]o preserve a proposed trial court error for review, trial counsel or the party must object in a timely fashion with specificity to allow the court and counsel to review the objection and correct any potential error.").

¶14 Lastly, even if we were to find Gunn's challenge was preserved and the trial court's decision was erroneous, any error was harmless. *See State v. Mendoza*, 227 Wis. 2d 838, 863-64, 596 N.W.2d 736 (1999) (holding that when a trial court erroneously strikes a prospective juror for cause, reversal is not automatic and we employ a harmless error analysis). An error is harmless when it does not effect the substantial rights of the party seeking reversal of the judgment. *Id.* at 864. Gunn does not make any argument that the jury ultimately selected to hear his case was biased or impartial. *Id.* Additionally, Juror 3 was struck for cause, not by a peremptory strike. *Batson* only applies to peremptory strikes. *See id.*, 476 U.S. at 96; *State v. James*, No. 2014AP2230-CR, unpublished slip op.,

¶23 (WI App Aug. 25, 2015) (stating that **Batson** and every case since has made it clear that discriminatory intent is based solely on peremptory strikes).[4]

¶15 Therefore, we conclude that Gunn is not entitled to any relief on his juror removal challenge.

## II. Ineffective Assistance of Counsel at Sentencing

¶16 To prevail on a claim of ineffective assistance of counsel, a defendant must show that counsel's performance was deficient and that the defendant suffered prejudice as a result. **Strickland v. Washington**, 466 U.S. 668, 687 (1984). We need not address both prongs of the test if the defendant does not make a sufficient showing on one of the prongs. **Id.** at 697.

¶17 As a preliminary matter, we note that Gunn requests a new sentencing hearing. However, an evidentiary hearing is "required before a court may conclude a defendant received ineffective assistance." **State v. Sholar**, 2018 WI 53, ¶53, 381 Wis. 2d 560, 912 N.W.2d 89; **State v. Machner**, 92 Wis. 2d 797, 804, 285 N.W.2d 905 (Ct. App. 1979). Thus, we evaluate whether Gunn is entitled to an evidentiary hearing.

¶18 When deciding whether a defendant is entitled to an evidentiary hearing, we first independently determine "whether the motion on its face alleges sufficient material facts that, if true, would entitle the defendant to relief." **State v. Ruffin**, 2022 WI 34, ¶27, 401 Wis. 2d 619, 974 N.W.2d 432. "Whether the record conclusively demonstrates that the defendant is entitled to no relief is also a

---

[4] Pursuant to WIS. STAT. RULE 809.23(3)(b), an unpublished authored opinion issued after July 1, 2009, may be cited for its persuasive value.

question of law we review independently." *State v. Spencer*, 2022 WI 56, ¶23, 403 Wis. 2d 86, 976 N.W.2d 383 (citations omitted). "If the motion does not raise facts sufficient to entitle the defendant to relief, or if it presents only conclusory allegations, or if the record conclusively demonstrates that the defendant is not entitled to relief, the [trial] court has the discretion to grant or deny a hearing." *Ruffin*, 401 Wis. 2d 619, ¶28.

¶19    Here, the record conclusively demonstrates that Gunn is not entitled to relief. Even if we assume that trial counsel performed deficiently, Gunn was not prejudiced. To establish prejudice, Gunn needed to show that but for counsel's error, "there is a reasonable probability the result of the sentencing hearing would have been different." *State v. Benson*, 2012 WI App 101, ¶19, 344 Wis. 2d 126, 822 N.W.2d 484. As the postconviction decision found, there is not a reasonable probability that the result of Gunn's sentencing hearing would have been different.

¶20    At sentencing, the State began by reading a victim impact statement from Joanna's mother. In the statement, Joanna's mother talked about the devastating impact of the loss of Joanna and having to raise Joanna's son. Joanna's mother asked for the maximum sentence.

¶21    The State argued for a total of thirty-eight years of initial confinement and twenty-eight years of extended supervision. The State emphasized the seriousness of the offense, the need to protect the community for a significant amount of time, the need to deter others in the community from engaging in similar behavior, and Gunn's lack of remorse.

¶22    Gunn's attorney stated that he was not making a recommendation because Gunn was maintaining his innocence. Gunn's attorney, however, argued

that the State's recommendation was too high based on the evidence of Gunn's culpability presented at trial and Gunn's personal characteristics, including the fact that Gunn lost his mother when he was young, Gunn was raised by his sister who was only three or four years older than him, and Gunn's father was absent when he was younger.

¶23    Gunn exercised his right to allocution. Gunn did not provide any additional information about his upbringing or his family. Gunn admitted that "I was involved in this situation in a way, but I don't feel I should be held accountable for the death of [Joanna]." Gunn stated that he wanted justice for Joanna and complained that he was the only one being held accountable.[5]

¶24    The trial court addressed the seriousness of the offense, the need to protect the community, and Gunn's character. As the State observes, the court's remarks reveal that it was focused on the seriousness of the offense and the protection of the community.

¶25    During its sentencing remarks, the trial court first observed that there was a "gunfight in broad daylight" with "multiple people turning a city street into a war zone" and a "completely innocent victim doing nothing related to this gunfight [was] killed … in front of two little kids and her sister." The court stated that the gravity of Gunn's offense was "at least a nine-and-a-half on a scale of 1 to 10," and Gunn and the others involved "showed no concern or no care for life, no concern for this community, no concern for other citizens, no concern for anyone."

---

[5] We note that contrary to Gunn's suggestion in his allocution, the record reflects that two other people were in fact charged, convicted, and received prison sentences in relation to this incident. Unlike Gunn, however, both individuals cooperated with the State and testified against Gunn at trial.

The court stated that it was not "entirely clear at the trial exactly which bullet killed the victim, but clearly Mr. Gunn participated in … a gunfight in broad daylight[.]" The court stated that this case was "highly aggravated" and Gunn "needs to be out of the community for a very, very lengthy period of time[.]"

¶26 In regards to Gunn's character, the trial court noted Gunn's prior record, that he showed "what boarders on remorse," and his lack of cooperation. The court stated that "[a]nybody who is willing to engage in or even consider this type of behavior needs years and years of rehabilitation." The court, however, made clear that rehabilitation was "not the primary focus of this sentence."

¶27 At the conclusion of sentencing, the trial court stated that Gunn's sentence was "based on the totality of the circumstances, the gravity of this offense, which is if not off the charts, is at the very, very high end of the chart, the tragic loss of life in the community, [and] the need to protect the community[.]" The trial court did not mention Gunn's character.

¶28 Based on the trial court's remarks, we are not persuaded "there is a reasonable probability the result of the sentencing hearing would have been different" if the additional information about Gunn's background had been presented. *Benson*, 344 Wis. 2d 126, ¶19. The court's remarks focused on the gravity of the offense and the protection of the community, not Gunn's character. Accordingly, Gunn has not established prejudice and we conclude that the trial court properly denied Gunn's postconviction motion without a hearing.

**CONCLUSION**

¶29 For all the reasons above, we reject Gunn's arguments and affirm.

*By the Court.*—Judgment and order affirmed.

10

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.