The State vs. Cameron.

THE STATE V. CAMERON.

1. CRIMINAL LAW—EVIDENCE—DYING DECLARATIONS.—On a trial for murder it is competent to give in evidence the dying declarations of the deceased, made while *in extremis,* and fully conscious that he could not survive to show the cause of death, but are not evidence of any other fact.

2. SAME.—Such declarations are admissible only in cases of homicide, when the death of the deceased is the subject of the charge, and the

The State vs. Cameron.

circumstances of the death are the subject of the dying declarations. Whether the declarations shall go to the jury is for the court to determine, but what weight they shall have is for the jury to determine, in view of the mental condition of the declarant at the time, and all the circumstances under which they were made.

3. VENUE—JURISDICTION.—Under the constitution, article 9, § 1, the state has concurrent jurisdiction on all rivers and lakes bordering on it, so far as they form a common boundary; and an indictment for a crime committed on such rivers or lakes, where they form a common boundary, may be found and tried in the county within the state bordering upon and opposite the place where it was committed.

4. JURY—PEREMPTORY CHALLENGE.—Where, after the panel of the jury is complete, and they are accepted by the state and the accused, though not sworn, it is then too late for the accused to challenge one of the number, though his peremptory challenges are not exhausted. STOW, C. J., *dissenting*.

5. GRAND JURORS—CHALLENGE.—It is not competent for a party who anticipates that a presentment or charge will be made against him for a crime, to question or object to grand jurors for any matter of disqualification, except such as is recognized or enumerated by statute.

6. SAME—CHALLENGE TO THE ARRAY.—It is not a good cause of challenge to the array of grand jurors that the sheriff, by order of the court, summoned fifteen additional jurors by a venire for that purpose, to complete the jury, without the list of jurors summoned being first called; the deficiency in the panel having been ascertained by the court by inquiry of the sheriff; nor that the sheriff who summoned them is the son of the prosecuting attorney.

7. PETIT JURY—CHALLENGE TO THE ARRAY.—The fact that the sheriff who summoned the petit jury is the son of the prosecuting attorney is no ground of challenge to the array; and a challenge to the array on the ground that the officer who summoned them was not indifferent will not be allowed, unless the accused produces proof to sustain it.

8. INDICTMENT—PRINCIPALS.—Where an indictment for murder in one count charges A. with giving the mortal wound, and B. with being present, aiding and abetting, and in the other charges B. with giving the mortal wound, and A. with being present, aiding and abetting, it is not inconsistent nor incongruous, as both are charged in each count as being principals.

(2 *Chand.* 172.)

CERTIFIED case from the Circuit Court for *Crawford* County.

This case came before the court on the report of the judge holding the circuit court for Crawford county, before

whom *Cameron* was tried for murder, and convicted of manslaughter. The judge having doubts as to some of the questions raised on the trial, and decided by him adversely to the accused, desired to be instructed and advised in regard thereto, by this court; and had in the meantime suspended judgment.

*F. J. Dunn*, for the defendant *Cameron*.

1. The organization of the grand jury was erroneous, in this, that the court ordered a new *venire* to be issued upon the supposition merely, that there were not in attendance upon the court a sufficient number to constitute a legal jury; that no act was done by the court to ascertain such fact; and all the evidence which it could have had was the report by the sheriff that eight jurors only were in attendance, which the counsel insisted did not invest the court with authority to order a new *venire* to complete the panel; that the court should have ascertained the deficiency, if any there was, by directing a call to be made of such jurors as were present, and thus have ascertained, in the only way he could, *judicially*, have been informed of the fact; that the report of the sheriff upon the number of jurors present, was not within the scope of his ministerial duty or authority, and could not make evidence of a fact upon which the court could exert its judicial functions; that until a deficiency of jurors had been ascertained by other means, the ordering the issue of a new *venire* was erroneous, and impeached the judicial integrity of the indictment found by the jury thus organized. He referred to the following authorities in support of his position. Old Rev. Stat. 510, 511; 2 Black. 477; 3 Wend. 314; 9 Mass. 100, 107: 1 Black, 317.

2. That the court should have allowed a peremptory challenge of a juror notwithstanding the juror had been questioned (but not under oath), as to being indifferent, provided, as the fact was, that the right of peremptory challenge had not been exhausted. 5 Leigh, 714, 715; 10 Pick. 478;

1 Denio, 304. He also claimed that the dying declarations of the deceased, under the circumstances disclosed, ought to have been rejected, and cited 14 Com. Law, 495 ; 19 id. 518. That it was not sufficiently averred in the indictment where the mortal wound was given to give jurisdiction to the court. The very place should have been stated so as to have given jurisdiction. 2 Va. Cas. 205.

*C. James* and *B. C. Eastman,* in behalf of the state, and acting for the attorney-general, in his absence, argued that where a juror, in a capital case is called and examined, and found upon such examination, to be indifferent, he could not be peremptorily challenged at a subsequent time, and after the whole panel had been completed ; that the right of challenge should be exercised *seriatim* as the jurors were called, until the right of challenge should have been exhausted. 4 Mason, 158 ; 7 Met. 500 ; 18 Conn. 166. That the right of peremptory challenge must be exercised before the juror is examined in regard to his prejudice against the accused, and to that point cited, 2 McLean, 611.

WHITON, J. This case comes here on the report of the circuit judge, before whom it was tried. The defendant was indicted for murder, and by the jury found guilty of manslaughter. The judge having doubts as to the correctness of his ruling, upon some of the questions which arose at the trial, reported the case to this court, according to the statute.

The first point to be decided, is in regard to the correctness of the ruling, in admitting proof of the dying declarations of the deceased.

It appears from the report, that a witness was introduced by the prosecution, and interrogated as to these declarations. The questions were objected to by the defendant's counsel, on the ground that no foundation had been laid for the introduction of the testimony, by showing that the

deceased was conscious, when he made the declaration, that he could not survive.

The witness was then questioned upon that subject, and answered that the deceased was conscious at the time that he could not survive. The court then decided that the declarations might be proved. Before the witness testified further in regard to them, it appeared that they were reduced to writing at the time they were made; the counsel for the defendant then objected to the evidence concerning them unless the writing was produced. The writing was then produced, and went to the jury as evidence.

We think the ruling of the court upon this subject was correct. The general doctrine in regard to the admissibility of dying declarations in evidence is well settled. When made under a sense of impending death, they are proper testimony to go to the jury to show the cause of death, but are not evidence of any other fact.

It appears further from the report, that after the evidence upon this subject had gone to the jury, other testimony was introduced in regard to the condition of the deceased when the declarations were made, and the circumstances under which he made them. Upon this subject the court charged the jury in substance, that if the deceased, at the time he made the declarations, was conscious that he could not survive, they were evidence for the jury to consider; but if he was not conscious of impending death—if he had then a hope of recovery, they must be excluded from the consideration of the jury. The court also charged the jury, that they were to consider whether the deceased, at the time when the declarations were made, had such possession of his reasoning faculties, as entitled his declarations to credit.

We think the charge of the court upon this subject was correct. The question as to whether the declarations shall go to the jury, is one for the court to determine. *Rex v. Hux,* 1 Stark. 521; and in order to make them admissible, the case

The State vs. Cameron.

on trial must be one of homicide, "when the death of the deceased is the subject of the charge, and the circumstances of the death are the subject of the dying declarations." *Rex v. Mead*, 2 Barn. & C. 605.

In this case a witness testified, before proof of the declarations was received, that they were made when the deceased was conscious that he could not survive. This was sufficient to lay the foundation for proof of them, and afterwards, when further testimony upon this subject had been received, the court properly left it to the jury to determine what weight should be given to the declarations, in view of all the circumstances under which they were made. Greenl. Ev. 160.

The court further reports that he was asked to charge the jury as follows: "That if there is a doubt whether he died in this county or in the county of Wabashaw and territory of Minnesota, that this doubt should be resolved in favor of the prisoner; that, so far as the above point is concerned, it is immaterial whether the courts of this state have jurisdiction over the entire Mississippi or not; that the allegation that the death took place in this county must be proved by the prosecution, or the defendant will be entitled to an acquittal." This the court refused to do, but, upon this subject, charged the jury as follows:

"As to the *venue*, I think, although it is, so far as I am aware, a new question in our courts, it would be sufficient if it be proven that the mortal wound was given in this county, if the deceased died anywhere upon the Mississippi, within the jurisdiction of this state, and neither above nor below the county line bordering upon the river."

We think the charge of the judge correct. The constitution of the state, Art. 9, § 1, provides that this state shall have concurrent jurisdiction on all rivers and lakes bordering on this state, so far as such rivers or lakes shall form a common boundary to this state and any other state or territory.

The judge further reports, that before the jury had been

sworn, but after they had been accepted by the counsel for the prosecution and by the defendant, the defendant asked leave to challenge peremptorily a juror, he not having challenged the number allowed by the statute. This the court refused to permit him to do.

A majority of this court think that this ruling was correct. The cases cited by the counsel for the prosecution show that in two of the states the practice is not to allow a defendant in a criminal prosecution to challenge a juror peremptorily, after he had been accepted, while in Massachusetts it appears that the privilege must be exercised before the juror is examined. *Commonwealth v. Rogers*, 7 Met. 500. An examination of the authorities shows that the practice is different in different states, and has not been uniform in the same courts.

The judge further reports, that he refused to permit the defendant to put certain questions to the grand jurors, for the purpose of establishing a cause of challenge for favor, and restricted him to the causes of challenge enumerated in the statute. The statute referred to, Laws of Wis. Ter. 269, § 14, provides that a person held to answer to any criminal charge, may object to the competency of a grand juror, before he is sworn, on the ground that he is a prosecutor or a witness on the part of the prosecution.

The question which the defendant proposed to put to the jurors did not relate to either of the causes of challenge mentioned in the statute, and the court decided correctly in refusing to allow them to be put to the jurors. *Tucker's Case*, 8 Mass. 286.

The judge further reports, that he refused to allow the defendant to challenge the array of grand jurors, for the reasons set forth in his motion, which are, that fifteen jurors were summoned by the sheriff, by order of the court, to supply a deficiency in the regular panel; that the court did not order the list of grand jurors called, for the purpose of ascertaining how many were in attendance, but ascertained from the report

The State vs. Cameron.

of the sheriff that only eight were present; that the jurors thus summoned were taken from the county at large, and that the sheriff was the son of the prosecuting attorney.

We think that the decision of the court was right. It is not claimed that, in point of fact, there was not the deficiency of jurors to be supplied, which the court ordered the sheriff to supply, but it is said that he did not ascertain the deficiency in a proper manner. The statute provides that, in case of a deficiency of grand jurors in any court, writs of *venire facias* may be issued, etc. If the deficiency in fact existed, and the court was satisfied of its existence, it was its duty to award a *venire facias*, as was done in this case. The statute is silent as to the mode of proceeding to ascertain the deficiency. It is no objection that the jurors, who were summoned by the sheriff, were not drawn, but were taken from the county at large. The statute was complied with, if the persons summoned were such as were qualified by law to serve; nor do we think that the fact that the sheriff who summoned them was the son of the prosecuting attorney constitutes an irregularity which would justify the challenge.

The judge further reports, that he refused to permit the defendant to challenge the array of petit jurors for the reason that the sheriff who summoned the jurors was the son of the prosecuting attorney, and, as was alleged by the defendant, not indifferent between him and the prosecution.

The fact that the sheriff was the son of the prosecuting attorney is, of itself, no cause of challenge, and we are not informed that any proof was offered to the court to show that the sheriff was not indifferent. A challenge to the array of petit jurors, for the reason of the partiality of the sheriff who summoned them, unaccompanied by any offer to prove the partiality alleged, it was clearly the duty of the court not to allow.

There is another matter reported by the judge, and that arises upon the indictment.

It appears that objection was taken to the indictment, because it charges the defendant *Cameron* with giving the mortal wound, in two counts, and one David Lefly with being present, aiding and abetting; while, in another count, Lefly is charged with giving the mortal wound and *Cameron* being present, aiding and abetting. It will be seen that they are both charged as principals, and there is no incongruity in charging the offense in this way. 1 Chit. Crim. Law, 256. We see no reason for arresting the judgment.

STOW, C. J., *dissenting*. While I approve in the main of the rulings of the circuit court in this case, I cannot sanction the refusing of the prisoner his peremptory challenge of the petit juror.

I have always supposed, and such has been my whole observation and experience, that the right on the part of the prisoner, of peremptory challenge in capital cases, within the prescribed number, existed until the actual swearing of the juror. I have seen this right often exercised, even after the oath had been partly administered, and I have never known it disputed. The very swearing, in such cases, of jurors separately, and the last solemn admonition, juror, look upon the prisoner! prisoner, look upon the juror! I suppose are intended to call the prisoner's attention, at the last moment, to the person of his trier, and to give him an opportunity, to the last, of excluding an objectionable one. The court of appeals of Virginia, a tribunal second to none in our country for ability, have with entire unanimity decided the question, in a case precisely similar to the one at bar, and have allowed the challenge. *Commonwealth v. Hendricks*, 5 Leigh, 709. We have been referred, however, to the syllabus of a Connecticut case, the report not being here, which indicates a different ruling. I never like to receive a reporter's memorandum for the decision of a court, and I very much doubt whether the supreme court of Connecticut ever made the decision represented. If,

however, it has, I prefer that of Virginia as being the more correct exposition of the old practice. And that practice, I take it, is to control. The trial by jury, as it existed of old, is *the* trial by jury secured by our national and state constitutions. It is not *granted* by these instruments; it is more—it is *secured.* It is no American invention. Our fathers brought it with them to this country more than two centuries ago, and, by making it a part of the constitution, they intended to perpetuate it for their posterity, and neither legislatures nor courts have any power to infringe even the least of its privileges. And I think it becomes us to be particularly cautious on this subject, in capital cases, at a time when a sensitive, but in my opinion a mistaken, humanity, has succeeded in abolishing the death penalty in several states, and is constantly assailing our own legislature for the same purpose.

In my opinion the refusing to allow the prisoner his peremptory challenge was erroneous, and for this reason I am in favor of granting a new trial.

Conviction affirmed.