STATE of Wisconsin, Plaintiff-Respondent,

v.

Carl R. NANTELLE, Defendant-Appellant.†

Court of Appeals

*No. 99–2159–CR. Submitted on briefs January 19, 2000.—Decided April 11, 2000.*

## 2000 WI App 110

(Also reported in 612 N.W.2d 356.)

†Petition to review denied.

On behalf of the defendant-appellant, the cause was submitted on the briefs of *William E. Schmaal,* assistant public defender of Madison.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *James E. Doyle,* attorney general, and *Daniel J. O'Brien,* assistant attorney general of Madison.

Before Cane, C.J., Hoover, P.J., and Peterson, J.

¶ 1. HOOVER, P.J. Carl Nantelle appeals his judgment of conviction for felony possession of tetrahydrocannabinol as a repeat drug offender and misdemeanor possession of drug paraphernalia. The sole issue is whether the trial court erred by failing to permit Nantelle to correct his counsel's mistaken exercise of a peremptory challenge after the jury was accepted, but before it was sworn. Nantelle claims that the trial court had the discretion to permit Nantelle's attorney to replace the juror he intended to strike with one he actually struck. Nantelle also contends that the trial court erroneously exercised that discretion, and as a result he was unable to effectively use his peremptory challenges. He finally argues that *State v. Ramos,* 211 Wis. 2d 12, 564 N.W.2d 328 (1997), requires reversal.

¶ 2. We conclude that counsel may not correct mistakes in exercising peremptory challenges after the

litigants accept a jury. Alternatively, if the trial court had the discretion to permit Nantelle to change the jury's composition after it was accepted, it properly exercised that discretion by refusing Nantelle's request. Finally, we decide that even if the trial court erred by declining Nantelle's request, the error was harmless. This case is not governed by *Ramos* because Nantelle was not required to exercise a peremptory strike to rectify a circuit court error. Moreover, there is no reasonable possibility the error contributed to Nantelle's conviction. Accordingly, the judgment is affirmed.

¶ 3. The relevant facts are brief and undisputed. During jury selection, both parties conducted voir dire examination and exercised four peremptory challenges against a venire of twenty prospective jurors. The challenges apparently were exercised by crossing the names of potential jurors off of a written seating chart. The clerk then read the names of the remaining twelve. When asked by the court, both the prosecutor and Nantelle's counsel indicated that the twelve named constituted the jury they had chosen. As the court prepared to have the jury sworn, defense counsel interrupted, indicating that he had mistakenly struck one of the jurors. The trial court ordered a sidebar conference, after which the twelve jurors originally chosen were sworn, and the eight who had been struck were excused.

¶ 4. The trial court then gave both parties the opportunity to make a record. Defense counsel explained that he intended to strike juror Immel, but inadvertently struck Pinkston instead, because he misread the juror-seating chart. He wanted to strike Immel because Immel stated he knew the sheriff. While Immel admitted during voir dire that he knew

the sheriff, he assured the court that this would not cause him to give a law enforcement officer's testimony any more weight than that of any other witness. ·

¶ 5. The trial court denied Nantelle's request to replace Immel with Pinkston. The court stated that the seating chart "clearly showed seating of each one of the jurors." The trial proceeded. The jury selected Immel as its foreman and returned a verdict convicting Nantelle. Nantelle appeals.

## ANALYSIS

¶ 6. Nantelle claims that the trial court had discretion to permit him to replace Immel with Pinkston. He contends that the trial court erred because it arbitrarily denied or impaired the effective exercise of his peremptory challenges. Nantelle asserts that *Ramos* governs the consequence of the trial court's error and requires a new trial. We disagree.

¶ 7. Both parties direct our attention to *State v. Cameron*, 2 Pin. 490 (1850), and *Santry v. State*, 67 Wis. 65, 30 N.W. 226 (1886), as being closely on point with the factual situation here. In *Cameron*, our supreme court upheld the trial court's decision to deny a defense request to exercise an unused peremptory challenge after both the prosecution and the defendant had accepted the jury, but before it was sworn. *See id.* at 495–96. The court relied on cases from other jurisdictions that held as a matter of law that "the practice is not to allow a defendant in a criminal proceeding to challenge a juror peremptorily, after he had been accepted . . . ." *Id.* at 496. The court noted, however, that the "practice is different in different states, and has not been uniform in the same courts." *Id.*

¶ 8. In *Santry*, the trial court permitted a prosecutor who had not exercised all his peremptory

challenges to exercise an additional one after he had expressed his satisfaction with the jury. *See id.* at 66–67. The defendant had not yet accepted the jury. *See id.* at 67. The supreme court noted that the jury had been neither accepted by both parties nor sworn. *See id.* The court stated that in the absence of any statute or rule, whether to permit the prosecutor to strike an additional juror was left to the discretion of the trial court. *See id.*

¶ 9. Nantelle claims that *Santry* effectively overruled *Cameron,* and we are to review for an erroneous exercise of discretion. He contends that because the prosecutor had indicated that he was satisfied with the jury, *Santry* is authority for the position that a party may exercise a peremptory strike after the jury has been accepted.[1] Neither *Santry*'s language nor facts support Nantelle's interpretation. The *Santry* court specifically distinguished *Cameron* on the grounds that *both* parties in *Cameron* had accepted the jury. *See Santry,* 67 Wis. at 67.

█

¶ 10. We read *Cameron* and *Santry* to hold that, as a matter of law, no peremptory strikes may be exercised after both parties have accepted the jury they have chosen, even though the jury is not yet sworn. Although this authority is remote in time and does not seem to comport with the wide discretion given judges in the process of jury selection,[2] it is binding precedent. *See Cook v. Cook,* 208 Wis. 2d 166, 189, 560 N.W.2d 246

---

[1] For the purposes of this opinion, we need not evaluate whether Nantelle is correct in apparently equating exercising a peremptory strike with correcting a mistake in striking a juror.

[2] The trial court has, subject to the essential demands of fairness, broad discretion in conducting voir dire. *See, e.g., State v. Koch,* 144 Wis. 2d 838, 847, 426 N.W.2d 586 (1988).

(1997) ("The supreme court is the only state court with the power to overrule, modify or withdraw language from a previous supreme court case.").

¶ 11. The State, nevertheless, acknowledges that the distinction between *Cameron* and *Santry* is a fine one. The State contends that a "more sensible rule," one consistent with other jurisdictions and the governing statutes in Wisconsin,[3] is that the parties lose the right to exercise peremptory strikes after they have expressed approval with the jury. The trial court, however, would have the discretion to allow additional peremptory strikes during the time between accepting and swearing the jury.[4]

¶ 12. If granting Nantelle's request to replace Immel with Pinkston was within the trial court's discretion, as suggested by the parties, we would nevertheless affirm. We will sustain a trial court's exercise of discretion if it has applied the proper law to the established facts and if there is any reasonable basis for its ruling. *See State v. Alsteen*, 108 Wis. 2d 723, 727, 324 N.W.2d 426 (1982). We will generally look for reasons to sustain a discretionary determination. *See Steinbach v. Gustafson*, 177 Wis. 2d 178, 185, 502 N.W.2d 156 (Ct. App. 1993). We may independently search the record to determine whether additional reasons exist to support the trial court's exercise of discretion. *See Stan's Lumber v. Fleming*, 196 Wis. 2d 554, 573, 538 N.W.2d 849 (Ct. App. 1995).

---

[3] The State does not identify the statutes that it considers applicable.

[4] Once the jury is sworn, jeopardy attaches. *See* WIS. STAT. § 972.07. All references to the Wisconsin Statutes are to the 1997–98 version.

¶ 13. The trial court's refusal to replace Immel with Pinkston was reasonable. It appears that the trial court denied the request because the jury had already been chosen, and defense counsel was solely at fault for the mistake.[5] Neither the State nor the trial court played any part in defense counsel's apparent mistake. In short, the court was not going to change the jury's composition after the parties had approved it simply because defense counsel made an avoidable mistake.

¶ 14. Further, granting Nantelle's request to replace Immel with Pinkston would have disrupted the jury selection process. Both parties had exercised all their peremptory strikes, and the twelve jurors had been chosen. The other eight venire members had already been segregated from those chosen, and the parties had expressed on the record and in the venire's presence their acceptance of the twelve chosen.

¶ 15. Moreover, Nantelle's proposed remedy of substituting Pinkston for Immel raises concerns of its own. First, the jury would have known that Nantelle wanted Pinkston on the jury. For this reason, it is conceivable that other jurors may have resented or discredited Pinkston or chosen to side with his position. Second, defense counsel and the prosecutor alternated exercising their strikes. It is common for attorneys to exercise a strike based in part on which juror opposing counsel has struck. The prosecutor may have chosen to strike Pinkston had he remained on the jury. Finally, although there is no dispute that this was an honest

---

[5] The seating chart was not preserved in the record. Absent the chart, there is nothing in the record to contradict the trial court's finding that the chart "clearly showed seating of each one of the jurors."

mistake, allowing a party to change a peremptory strike after the jury is chosen could encourage a dishonest mistake by an unscrupulous attorney.[6]

¶ 16. Even if we were to assume that the trial court erred by denying Nantelle's request to replace Immel with Pinkston, we would still affirm on the grounds that the error was harmless. This case is not governed by *Ramos*. There, the trial court erroneously refused to strike a juror for cause. As a result, the defendant was required to use a peremptory challenge to remove that juror. *See id.* at 23. The supreme court concluded that a defendant forced to exercise peremptory strikes in order to correct a circuit court's error in voir dire impermissibly deprived the defendant of an important statutory right. *See id.* at 24–25. The deprivation warranted reversal of the conviction and a new trial even though the jury that ultimately heard the case was impartial. *See id.* at 24.

¶ 17. That situation does not exist in this case. Pursuant to the statute, both parties exercised all their peremptory strikes. That procedure was not tainted by any erroneous trial court rulings on strikes for cause. There is no suggestion that Immel should have been removed for cause because he fell into one of the classes of bias delineated by *State v. Faucher*, 227 Wis. 2d 700, 716–19, 596 N.W.2d 770 (1999) (statutory bias, subjective bias, and objective bias). Neither the prosecutor nor the trial court did anything to deprive Nantelle of a

---

[6] The State suggests that rather than permitting a party to change a peremptory strike after the jury is accepted, the trial court should redo the entire peremptory strike process. Although we do not reach the issue, we note other courts have utilized that procedure. *See, e.g., Morgan v. United States*, 564 F.2d 803, 804 (8th Cir. 1977); *McCormick v. Gullet*, 460 S.W.2d 813, 814 (Ky. 1970).

peremptory challenge. Rather, the error assigned to the trial court was its refusal to permit Nantelle to correct a mistake his counsel had made.

¶ 18. Nor will we extend *Ramos* to apply to this situation. In *State v. Erickson*, 227 Wis. 2d 758, 772–73, 596 N.W.2d 749 (1999), the supreme court rejected an attempt to expand *Ramos*:

> Simply stated, *Ramos* entitles a defendant to automatic reversal only in limited circumstances: a circuit court, after the defendant has challenged a juror for cause, incorrectly concludes that the juror does not need to be removed for cause. Under such a fact scenario, the defendant uses peremptory strikes to correct a circuit court error, effectively receiving fewer strikes than provided for in the statute and receiving fewer strikes than received by the State. *Ramos* stands for nothing more and we decline to expand its reach beyond those facts.

■

¶ 19. Given that reversal is not required under *Ramos*, we employ a harmless error analysis of any trial court error. *See State v. Mendoza*, 227 Wis. 2d 838, 864, 596 N.W.2d 736 (1999).[7] "The test for harmless error is whether there is a reasonable possibility that the error contributed to the conviction. The conviction

---

[7] In *State v. Mendoza*, 227 Wis. 2d 838, 856, 596 N.W.2d 736 (1999), the supreme court addressed a trial court's erroneous grant of challenges for cause. It determined that the erroneous dismissal of a prospective juror did not violate the defendant's right to an equal number of peremptory challenges. *See id.* at 860–61. The court concluded that reversal under *Ramos* was not required and, instead, employed a harmless error analysis. *See id.* at 864. Similarly, we have concluded that reversal is not required under *Ramos*, and therefore employ a harmless error analysis.

must be reversed unless the court is certain the error did not influence the jury." *State v. Sullivan*, 216 Wis. 2d 768, 792, 576 N.W.2d 30 (1998). The burden of proving harmless error is upon the State. *See id.*

¶ 20. Even were we to assume the trial court erred, we conclude that Nantelle received a fair and impartial jury. Immel merely acknowledged that he knew the Brown County sheriff. This does not support the conclusion that Immel was biased. *See State v. Louis*, 156 Wis. 2d 470, 483, 457 N.W.2d 484 (1990) (two jurors who were Milwaukee police officers and knew witness who also worked in police department were not biased). The record does not reflect whether Immel's familiarity with the sheriff arose in a positive or negative context. Additionally, the only law enforcement officer testifying was not from the sheriff's department, but was a member of the City of Green Bay Police Department. Moreover, Immel affirmed that his acquaintance with the sheriff would not cause him to give more weight to the testimony of a police officer than any other witness.

¶ 21. We determine that there is no reasonable possibility that declining to replace Immel with Pinkston contributed to the conviction. Immel's presence on the jury, as opposed to Pinkston's, had no effect on the evidence presented, arguments made, or the ultimate verdict rendered by the fair and impartial jury.

¶ 22. We decide that the trial court's decision is governed by *Cameron*, which holds, as a matter of law, that peremptory challenges may not be exercised, and therefore changed, after the parties have accepted the jury. Nevertheless, if the trial court had the discretion to permit Nantelle to change the jury's composition after it was accepted, it properly exercised its discre-

tion by refusing Nantelle's request. Finally, we decide that even if the trial court committed error by declining Nantelle's request, the error was harmless. This case is not governed by *Ramos* because Nantelle was not required to exercise a peremptory strike to rectify a trial court error, and there is no reasonable possibility that Immel's presence on the jury contributed to the conviction. Accordingly, the judgment is affirmed.

*By the Court.*—Judgment affirmed.