**COURT OF APPEALS**
**DECISION**
**DATED AND FILED**

**May 19, 2020**

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

**Appeal No.    2018AP1058**

Cir. Ct. No. 2006CF2202

**STATE OF WISCONSIN**

**IN COURT OF APPEALS**
**DISTRICT I**

STATE OF WISCONSIN,

      PLAINTIFF-RESPONDENT,

    V.

WINSTON B. EISON,

      DEFENDANT-APPELLANT.

APPEAL from an order of the circuit court for Milwaukee County: JOSEPH R. WALL, Judge. *Affirmed*.

Before Brash, P.J., Dugan and Fitzpatrick, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1 PER CURIAM. Winston B. Eison, *pro se*, appeals an order denying the motion he filed pursuant to WIS. STAT. § 974.06 (2017-18).[1] He seeks a new trial. As grounds, Eison claims that he received ineffective assistance from the attorney who represented him in his first postconviction motion because the attorney failed to assert that Eison was wrongly denied his right to represent himself at trial. The circuit court rejected the claim, and we affirm.[2]

## BACKGROUND

¶2 Eison's appellate challenge involves a collateral attack on his conviction, but the issue he raises requires a substantial overview of the procedural history of the pretrial and trial proceedings in this matter. We begin with that overview.

¶3 The State filed a complaint on April 30, 2006, charging Eison with armed robbery and false imprisonment. According to the complaint, Eison confronted A.C. in an underground garage in Milwaukee, Wisconsin on April 21, 2006, forced her into her car's passenger seat at gunpoint, and drove out of the garage in her car with A.C. inside. Eventually, he pulled to the side of a city street, ordered A.C. out of her car, and drove away with her purse and wallet. Police arrested Eison four days later as he fled from a vehicle stolen in a different

---

[1] All references to the Wisconsin Statutes are to the 2017-18 version unless otherwise noted.

[2] The Honorable Joseph R. Wall presided over the postconviction motion underlying this appeal. We refer to Judge Wall as the circuit court. The Honorable Mel Flanagan presided over the pretrial proceedings through May 2007. Thereafter, the Honorable Thomas P. Donegan presided over the pretrial proceedings, as well as the trial, the sentencing, and Eison's first postconviction motion. We refer to both Judge Flanagan and Judge Donegan as the trial court.

robbery that occurred in Shorewood, Wisconsin.[3]  A.C. picked Eison out of a line up as the person who robbed and imprisoned her.

¶4      The State Public Defender's Office appointed an attorney to represent Eison but that attorney moved to withdraw in July 2006, because Eison was dissatisfied with the number of times that counsel had conferred with him. The circuit court granted the motion to withdraw and, in early August 2006, the State Public Defender's Office appointed a second attorney for Eison.  Following an October 2006 court appearance attended by Eison and his new counsel, the matter was set for a jury trial in February 2007.

¶5      At a motion hearing in January 2007, Eison asked the circuit court for a different trial counsel.  He complained that his trial counsel had not filed the motions he wanted to pursue and had not maintained adequate contact with him. He also alleged that trial counsel was not prepared for trial, and he emphasized that trial counsel had not contacted his witnesses, particularly an alibi witness named "John."  Eison acknowledged, however, that he had no other identifying information for the alleged alibi witness.  The trial court determined that Eison's proposed pretrial motions were groundless and found no basis to replace his trial counsel but did reschedule the trial for March 2007 to permit trial counsel to look for the alibi witness.

¶6      On February 28, 2007, Eison filed a letter that began: "I have decided to represent myself in my upcoming jury trial."  He added that he did "not wish to waive [his] right to counsel," but he also did not want his current counsel

---

[3]  The record reflects that Eison was not charged in the Shorewood robbery.

to continue with the representation in light of a "huge communication gap." He went on to ask the trial court to adjourn the trial to permit him time to prepare. At a subsequent hearing, the trial court denied Eison's request to represent himself but the trial court also said that it would reconsider the request at the next court date if he wished. The trial court then adjourned the trial until June 2007 to permit an additional pretrial hearing in May 2007. The trial court added, however, that the case was "a year old. We're not go[ing to] keep coming back because there [are] new issues that you want to bring up before the court. So we have one motion date, where we will complete all the pending motions."

¶7    At the motion hearing on May 9, 2007, Eison renewed his request to represent himself. The trial court granted the request, directing his appointed trial counsel to serve as stand-by counsel instead. The trial was adjourned to August 20, 2007, to permit Eison time to look for his alibi witness and to file a notice of alibi.

¶8    In mid-July 2007, Eison submitted a written motion to extend the deadline for filing a notice of alibi, alleging that he had not yet found his alibi witness. On August 20, 2007, he moved to adjourn the trial based on the same allegation. The trial court granted both motions but cautioned him that his *pro se* status could not "be used as a method for continually adjourning trial."

¶9    On November 2, 2007, the circuit court conducted a lengthy hearing on motions that Eison filed *pro se*. At the conclusion of that hearing, Eison asked the trial court to reinstate his standby counsel as counsel of record instead. Standby counsel then advised the trial court that his law license would be suspended for two months. The trial court directed standby counsel to seek

guidance from the State Public Defender's Office about a potential reappointment as counsel of record.

¶10     At a status conference on January 17, 2008, a new attorney appeared with Eison as successor counsel and explained that, due to standby counsel's license suspension, the State Public Defender's Office had appointed new counsel in the matter. The attorney further advised that Eison wanted representation, not standby counsel. The trial court said that, in its view, Eison should have representation. Eison agreed, and the trial court said that it would appoint the new attorney as Eison's counsel of record. Eison responded, "that's okay."

¶11     In subsequent pretrial proceedings, the trial court scheduled the trial for June 2, 2008, and the parties appeared on that date. Eison asked to discharge his trial counsel because the attorney had not located the alleged alibi witness or obtained video footage that Eison claimed would demonstrate that he was on a Milwaukee city bus at the time that A.C. was robbed. In response, trial counsel asserted that Eison had not provided the information necessary to locate the witness and, as to video footage, trial counsel said he had relied on prior counsel's assertion that such video was unavailable. The trial court determined that Eison's allegations about his attorney's failures required further inquiry and, therefore, adjourned the trial. The trial court nonetheless observed that it was "leery of these claims" and that, in its view, Eison was "attempting to delay delay delay."

¶12     At a status conference on July 22, 2008, trial counsel reported that hoped-for video of the Milwaukee city bus did not exist. Further, trial counsel was not able to locate the alibi witness because the family member who could allegedly identify that witness would not answer the telephone or reply to counsel's letters. Eison responded by first requesting a new attorney of record and

5

then requesting new standby counsel. The State urged the circuit court to deny the requests and set the matter for trial, noting that appointing new counsel would occasion more delay in a case that had been pending for more than two years and where the victim was a senior citizen.[4] The trial court agreed with the State, finding that the case was "very old," that Eison was responsible for most of the delay, and that he had not presented anything that raised a doubt about the adequacy of his trial counsel's representation.

¶13    Trial counsel then advised that Eison wanted to represent himself. The trial court said it would consider that request on the first day of trial, which the trial court scheduled for September 8, 2008.

¶14    On September 8, 2008, the parties convened for trial. Eison, acting on his own behalf, requested an adjournment on the grounds that his trial counsel was not prepared and the State had withheld discovery. The trial court questioned the State and defense counsel about Eison's allegations. Following a close and extended inquiry, the trial court concluded that the allegations had previously been litigated and rejected, no basis existed for Eison's discovery requests, and nothing suggested that the State had acted improperly. Eison responded that he did not want to continue with his current counsel and moved the trial court to discharge counsel for failing to provide an "effective defense." The trial court denied the motion, finding that the case had been "delayed a long time," trial counsel was prepared for trial, and "there [wa]s no further basis for delaying this trial."

---

[4] The victim was seventy-eight years old at the time of the crime.

¶15 Eison then renewed his request to proceed *pro se*. He explicitly admitted, however, that he was not yet prepared to try the case. The trial court reminded Eison that his appointed counsel was ready to proceed, and Eison responded that his appointed counsel was not "credible [sic] to represent" Eison. The trial court responded: "I find [that] you are going to find that for any attorney[,] to delay this as much as you can."

¶16 The trial court went on to rule that Eison could not represent himself effectively and was engaged in a ploy to avoid trial:

> Based on the manner in which you have attempted to represent yourself by way of *pro se* motions, letters to the court, statements in court, I find you cannot limit yourself to stay within the rules of this proceeding, including relevancy determinations, issues of prejudice, timeliness. I don't believe you could possibly, effectively represent yourself, and it is my obligation to do my best to assure a fair result. Whether that's a result either party wants isn't my issue, that it's fair is.
>
> And the proceedings in this case up to now which essentially you have just kept this forum from getting to the nub of the issue is a trial, has so far been defeating the right of, to reach a fair result.
>
> So I find that it's an actual disability on your part to make a meaningful defense, and I would not allow you to represent yourself.

Accordingly, the trial court denied Eison's request to proceed *pro se*, and the trial commenced with Eison represented by counsel.

¶17 On the third day of trial, outside the presence of the jury, trial counsel raised four evidentiary objections, explaining that Eison personally requested rulings on the matters. Trial counsel also raised a fifth issue that counsel described as his "own thing," namely, that two weeks earlier Eison had filed a grievance against trial counsel with the Office of Lawyer Regulation and

had only just disclosed the grievance to trial counsel. Trial counsel expressed concern about a potential conflict of interest but then conferred with Eison off the record. Trial counsel next advised the trial court: "all he is wishing right now is ... for the [c]ourt to rule one way or the other in regards to these objections that he has requested.... [H]e says that he is otherwise, you know, satisfied, would like me to continue on as his lawyer." The trial court asked Eison directly if that assertion was correct. Eison replied, "[y]es sir."

¶18 The trial continued for a fourth day. The jury found Eison guilty as charged.

¶19 The State Public Defender's Office appointed postconviction and appellate counsel for Eison, and he pursued a postconviction motion raising challenges to the admission of certain evidence at trial. The trial court denied the motion, Eison appealed, and we affirmed. *See **State v. Eison** (**Eison I**)*, No. 2010AP909-CR, unpublished slip op. (WI App Mar. 1, 2011).

¶20 Eison, *pro se*, next filed the postconviction motion underlying this appeal. As relevant here, he alleged that the trial court wrongly denied him the right to represent himself, and that his appointed postconviction counsel was ineffective for failing to raise this claim. In a written order, the circuit court denied the motion without a hearing, finding that "the issue of self-representation was addressed by [the trial court], [which] stated very specific reasons for denying [Eison's] request and suggested that [Eison] was using it as a delay tactic." The circuit court concluded that the trial court reasonably denied Eison's request to proceed *pro se* and, therefore, postconviction counsel was not ineffective for failing to pursue the issue. Eison appeals.

**DISCUSSION**

¶21 Defendants have a constitutional right to represent themselves under both the Sixth Amendment to the United States Constitution and article I, section 7 of the Wisconsin Constitution. *See State v. Egerson*, 2018 WI App 49, ¶10, 383 Wis. 2d 718, 916 N.W.2d 833. Eison claims that the trial court denied him that right.

¶22 WISCONSIN STAT. § 974.06 is the mechanism for a prisoner such as Eison to raise constitutional claims after the time for a direct appeal has passed. *See* § 974.06(1). The statute contains a limitation, however, because "[w]e need finality in our litigation." *See State v. Escalona-Naranjo*, 185 Wis. 2d 168, 185, 517 N.W.2d 157 (1994). A convicted prisoner is procedurally barred from bringing claims under § 974.06 if the prisoner could have raised the claims in a previous postconviction motion or on direct appeal unless the prisoner states a "'sufficient reason'" for failing to raise those issues previously. *See Escalona-Naranjo*, 185 Wis. 2d at 181-82 (citing § 974.06(4)).

¶23 In this case, Eison claims that his reason for serial litigation is the ineffective assistance of his postconviction counsel, who did not allege in the proceedings underlying *Eison I* that he was denied his right to represent himself at trial. Postconviction counsel's ineffectiveness may constitute a sufficient reason for an additional postconviction motion. *See State ex rel. Rothering v. McCaughtry*, 205 Wis. 2d 675, 682, 556 N.W.2d 136 (Ct. App. 1996). A convicted person may not, however, merely allege that postconviction counsel was ineffective but must "make the case of" postconviction counsel's ineffectiveness. *See State v. Balliette*, 2011 WI 79, ¶67, 336 Wis. 2d 358, 805 N.W.2d 334.

¶24   The two-prong test set forth in ***Strickland v. Washington***, 466 U.S. 668, 687 (1984), governs claims that postconviction counsel was constitutionally ineffective. *See **Balliette***, 336 Wis. 2d 358, ¶¶21, 28. That test requires the defendant to show both that postconviction counsel's performance was deficient and that the deficiency prejudiced the defense. *See **Strickland***, 466 U.S. at 687 (1984). A court may consider either deficiency or prejudice first, and if the defendant fails to satisfy one prong, the court need not address the other. *See **id.*** at 697.

¶25   To prove deficiency under ***Strickland***, a defendant must show that counsel "made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *See **id.*** at 687. To prove prejudice, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." ***Id.*** at 694. A reviewing court will not disturb the lower court's findings of fact, "'the underlying findings of what happened,'" unless they are clearly erroneous, but the ultimate questions of whether counsel's performance was deficient and whether the deficiency was prejudicial are questions of law that are reviewed *de novo*. *See **State v. Johnson***, 153 Wis. 2d 121, 127-28, 449 N.W.2d 845 (1990) (citations omitted).

¶26   According to Eison, postconviction counsel performed deficiently by not challenging the trial court's ruling denying his request to represent himself. Because a claim predicated on failure to challenge a *correct* trial court ruling cannot satisfy either ***Strickland*** prong, *see **State v. Ziebart***, 2003 WI App 258, ¶14, 268 Wis. 2d 468, 673 N.W.2d 369, we must determine whether the trial court properly denied Eison's request to proceed *pro se*. If the trial court did not err, Eison cannot prevail.

¶27 Our analysis of the trial court's ruling starts with the principle that the right to self-representation is not absolute. *See* ***State v. Oswald***, 2000 WI App 3, ¶28, 232 Wis. 2d 103, 606 N.W.2d 238. A court considering whether to permit a person to proceed *pro se* must balance the person's right to do so against the State's interest in "avoiding any interference with the orderly administration of justice and preserving the integrity of the trial process." *See* ***Hamiel v. State***, 92 Wis. 2d 656, 672, 285 N.W.2d 639 (1979). The right to proceed *pro se* is "not intended to allow the defendant the opportunity to avoid or delay the trial for any unjustifiable reason." ***Id.*** at 673. Accordingly, the decision to grant or deny a belated request to proceed *pro se* rests in the trial court's discretion, and "[w]here the request to proceed *pro se* is made on the day of trial or immediately prior thereto, the determinative question is whether the request is proffered merely to secure delay or tactical advantage." *See* ***id.*** at 672-73. The United States Court of Appeals for the Seventh Circuit recently reaffirmed these long-standing principles, explaining: "[w]here a defendant invokes his right so late as to delay a trial or engages in 'serious and obstructionist misconduct,' a judge may deny the exercise of the right of self-representation." ***Imani v. Pollard***, 826 F.3d 939, 947 (7th Cir. 2016) (citing ***Faretta v. California***, 422 U.S. 806, 834-35 & n.46 (1975)).

¶28 In this case, as we have seen, Eison vacillated in regard to the issue of his representation. The trial court expressed concern on several occasions about the delay caused by Eison's changing positions, but nonetheless permitted him to proceed *pro se* on May 9, 2007, and also permitted him to change his mind and

reinstate counsel of record on January 17, 2008.[5]  On his next scheduled trial date of June 2, 2008—the fifth trial date in this case—Eison requested new counsel, a request that the trial court viewed as part of an attempt to "delay delay delay," but that nonetheless led to yet another trial adjournment to permit an inquiry into his allegations about trial counsel's alleged missteps.  At the conclusion of the July 22, 2008 status conference addressing his allegations, the trial court rejected them as meritless and denied his request for new counsel.  Eison then moved once again to proceed *pro se*.  The trial court responded that it would resolve the question on the first day of trial, scheduled to begin in six weeks.  On the September 8, 2008 trial date—nearly two and one-half years after the State charged him in this matter—Eison complained about his lawyer and renewed his motion to proceed *pro se*, but he explicitly advised the trial court that he was not prepared to conduct the trial.  Only then did the trial court deny the motion.

¶29    In rejecting Eison's final motion to represent himself, the trial court determined that Eison would be dissatisfied with "any attorney [in order] to delay this as much as [he] c[ould]"; that "up to now" Eison had "essentially ... just kept this forum from getting to the nub of the issues [which] is a trial"; and that Eison had "been defeating the right ... to reach a fair result."  In other words—as the circuit court explained in denying Eison's postconviction motion—the trial court found that Eison was invoking his right to represent himself as a delaying tactic.

_____

[5] Eison asserts that the trial court "violat[ed his] right to self-representation" on January 17, 2008, when the trial court designated his newly-appointed successor counsel as counsel of record rather than as stand-by counsel.  The record flatly contradicts this assertion.  Eison confirmed during the January 17, 2008 hearing that he wanted successor counsel to act as his attorney, not as his stand-by counsel.  The trial court then stated that it would appoint successor counsel as Eison's attorney of record, and Eison agreed.

¶30    The trial court's finding that Eison was engaged in an effort to delay his trial is a finding of fact, a "'finding[] of what happened,'" and we may not disturb such a finding unless it is clearly erroneous. *See Johnson*, 153 Wis. 2d at 127 (citations omitted). The finding here is plainly not erroneous. To the contrary, the finding constitutes a reasonable determination based on the facts of record and Eison's behavior over more than two years of litigation. Accordingly, we must sustain the finding.

¶31    As to the trial court's discretionary decision denying Eison's motion to represent himself, we will uphold a discretionary decision if the trial court considered relevant facts, applied a proper legal standard, and reached a reasonable conclusion. *See State v. Edmunds*, 2008 WI App 33, ¶8, 308 Wis. 2d 374, 746 N.W.2d 590. Here, the trial court considered the key fact identified by *Hamiel*, namely, whether Eison was seeking to invoke his right to self-representation as a delaying tactic, *see id.*, 92 Wis. 2d at 672-73, and the trial court indicated that, in its view, he was engaged in gamesmanship. The trial court's decision to deny his request to proceed *pro se* therefore constituted a reasonable exercise of discretion.

¶32    We recognize that the trial court also assessed whether Eison would be an effective advocate for himself at trial and whether he could present a meaningful defense. Eison asserts that the trial court erred in making those assessments and in support he points to *Faretta*, 422 U.S. at 836, in which the Supreme Court held that technical legal knowledge is not relevant to assessing a request to proceed *pro se*. Assuming without so holding that the trial court considered some irrelevant factors in resolving Eison's motion to represent himself, that assumption does not affect our conclusion. We look for reasons to sustain a trial court's discretionary decision, *see State v. Nantelle*, 2000 WI App

110, ¶12, 235 Wis. 2d 91, 612 N.W.2d 356, and we will not reverse an exercise of discretion unless it "is wholly unreasonable," *see* **State v. Johnson**, 118 Wis. 2d 472, 481, 348 N.W.2d 196 (Ct. App. 1984). We are satisfied that the trial court reasonably found that Eison invoked his right to represent himself in an effort to delay his trial, regardless of any other findings the trial court may have made.

¶33 Because we conclude that the trial court did not err in rejecting Eison's motion to proceed *pro se*, we necessarily conclude that postconviction counsel was not ineffective for failing to raise the claim. *See* **Ziebart**, 268 Wis. 2d 468, ¶14. The circuit court, therefore, properly denied Eison's postconviction motion.

¶34 For the sake of completeness, we add that even if we were to conclude that the trial court erred on the first day of trial by refusing to permit Eison to represent himself—and we do not reach such a conclusion—we would nonetheless reject Eison's claim for relief on the ground that Eison subsequently forfeited his right to self-representation. "[A] defendant who wants to proceed unaided must be allowed to do so 'unless the accused has acquiesced in such representation.' The implication is clear: defendants forfeit self-representation by remaining silent at critical junctures before or during trial." **Cain v. Peters**, 972 F.2d 748, 750 (7th Cir. 1992) (citing **Faretta**, 422 U.S. at 821) (one set of brackets omitted).

¶35 In this case, trial counsel advised on the third day of trial that Eison had just disclosed the existence of a grievance he had filed against trial counsel but trial counsel then went on to say that Eison was "satisfied, would like [trial counsel] to continue on as his lawyer." When the trial court asked Eison directly if that was correct, Eison responded: "[y]es sir." Thus, notwithstanding any

claimed error in the trial court's ruling on the first day of trial that Eison could not proceed *pro se*, Eison subsequently forfeited his right to self-representation by his mid-trial actions. *See Cain*, 972 F.2d at 750.

¶36 A convicted defendant may not seek postconviction relief based on a claim that he or she has freely withdrawn. To the contrary, "[i]f a defendant selects a course of action, that defendant will not be heard later to allege error or defects precipitated by such action. Such an election constitutes waiver or abandonment of the right to complain." *State v. Krancki*, 2014 WI App 80, ¶11, 355 Wis. 2d 503, 851 N.W.2d 824 (citation omitted). Therefore, even if the trial court erred at the start of the trial by denying Eison the right to represent himself, postconviction counsel was not ineffective for failing to raise the issue in the postconviction motion and direct appeal. "[F]ailure to argue an issue on appeal which is waived is not ineffective assistance of counsel." *Rothering*, 205 Wis. 2d at 678.

¶37 In sum, we are satisfied that postconviction counsel was not ineffective in failing to raise a claim that Eison was wrongly denied the right to proceed *pro se* at trial. Eison, therefore, lacks a sufficient reason for his serial litigation, and his claim is barred. *See Escalona-Narnanjo*, 185 Wis. 2d at 181-82. Accordingly, we affirm.

*By the Court.*—Order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)(5).